94 So.2d 362 (1957)
Sophronia I. ESTES, Appellant,
v.
E.B. MOYLAN, Jr., Appellee.
Supreme Court of Florida, En Banc.
February 6, 1957.
Rehearing Denied May 2, 1957.
*363 R.P. Terry, Miami, for appellant.
Anderson & Nadeau, Miami, for appellee.
ROBERTS, Justice.
This is an appeal by defendant from a summary judgment entered in favor of plaintiff, a real estate broker, in his suit to recover a broker's commission from defendant.
The cause of action stated by plaintiff was, in substance, that "the defendant employed the plaintiff to find a purchaser for certain property then belonging to her, and at said time agreed to pay the plaintiff a commission for finding a purchaser for *364 said property;" that as a result of plaintiff's efforts the defendant did, on August 30, 1954, enter into a contract with one Shuey for the purchase and sale of a 580-acre tract and "in said contract, and in ratification of the plaintiff's employment, the defendant agreed to pay the plaintiff $34,800.00 as a commission for finding a purchaser for the property described in said agreement * * *"; and that "thereafter, the defendant concluded the transaction by executing and delivering a deed * * * for a portion of the acreage described in the said contract," for which plaintiff claimed a commission of some $24,900, representing 10 percent of the purchase price of the smaller acreage actually sold by defendant.
Both parties moved for summary judgment, supported by affidavits; and, after answer filed by defendant, the trial judge entered a summary judgment for plaintiff. Defendant has appealed.
The facts of the transaction, as shown by the affidavits in the record, are that the plaintiff Moylan approached the defendant, Mrs. Estes, stating that he had a customer for certain property owned by her. The customer was purported to be one Shuey. Negotiations between Shuey and Mrs. Estes, transmitted through Moylan, culminated in the contract of August 30, 1954, referred to in the complaint. This contract provided for the purchase and sale of a 580-acre tract (designated Parcel No. 1) at a price of $600 per acre, and for an option to purchase another parcel, not here involved. The transaction was to be closed on October 11, 1954, and a part of the purchase price paid at that time, the balance to be covered by a mortgage payable over a four-year period. In this contract, Mrs. Estes agreed to pay Moylan "as commission for finding a purchaser for the above-described property the sum of $34,800.00 if the sale of Parcel No. 1 is concluded * * *." But it was also stipulated therein that "The broker's commission shall be paid as the principal is received by Estes. No commission shall be payable therefor if either transaction fails of consummation for a cause not attributable to Estes or because of title defects."
Shuey was actually acting as the agent of Maule Industries, Inc., in purchasing the property, a fact disclosed to Mrs. Estes at the time the August 30th contract was executed. Some three weeks later, on September 24, 1954, upon the insistence of and through negotiations with two other agents of Maule (Hough and Weiss), Mrs. Estes entered into a new contract for the sale to Maule of only a portion (385 acres) of the tract covered by the old (August 30th) contract but at a higher price ($650) per acre. Moylan did not participate in the negotiation of the new contract, and Mrs Estes said that she saw him only one time after the execution of the old contract, and then only to "pass the time of day." It is conceded that it was at Maule's insistence and request that the old contract was superseded by the new contract, and not because of any default on the part of Mrs. Estes.
There is a dispute as to whether Maule's agents definitely terminated the old contract, for reasons of their own not necessary here to relate. Hough stated that he did not and that he always intended to consummate the old contract if Mrs. Estes was unwilling to accept the new proposal. Mrs. Estes and her son stated positively that Shuey told them that Maule would not go through with the old contract, and Shuey did not controvert their statements. There is also some dispute as to the inferences to be drawn from Mrs. Estes' attendance at a zoning board meeting at which the tract was re-zoned to a use that would permit quarrying operations, which was Maule's purpose in buying the property.
These disputes are not important in the view we take of the matter, and the trial judge must also have considered them immaterial, since he entered summary judgment *365 in favor of the plaintiff. His action in this respect (judging by the argument of Moylan here) was apparently based on the rule, as stated in Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876, 878, that "If the broker has brought the parties together and a sale is effected as a result of continuous negotiations inaugurated by him, he will not be defeated in his effort to recover compensation simply because of a variation between the original terms stated by the owner and those finally accepted. Dancy et al. v. Baker, 206 Ala. 236, 89 So. 590." Accord: Katz v. Bear, Fla. 1951, 52 So.2d 903, 904; Parrish v. Tyre, Fla. 1952, 59 So.2d 250. And see Shuler v. Allen, Fla. 1955, 76 So.2d 879, 883, for a precise definition of "continuous negotiations" within the meaning of the rule.
We are of the opinion that the rule of Taylor v. Dorsey, supra, is not applicable under the facts shown by this record.
The rule, by its very terms, applies to a situation where the owner of property, as principal, has employed a broker to find a purchaser for property at a stipulated price. It was developed as a qualification of the legal principle that, ordinarily, under such a brokerage agreement, the broker does not earn his commission if he fails to produce a purchaser who is able, ready and willing to buy at the stipulated price; and it finds its justification in the fact that "Courts are not disposed to allow a broker's undertaking, in process of accomplishment, to be defeated by any fraud or inequitable conduct on the part of his principal, whereby the principal would profit by the broker's service and at the same time evade a just liability to make due compensation." Dancy v. Baker, 206 Ala. 236, 89 So. 590, 591, cited in Taylor v. Dorsey, supra, as authority for the rule therein adopted. It is usually applied in two types of situations to support a recovery by the broker of his commission: (1) where the owner interrupts incomplete and continuing negotiations between the broker and his customer and effects a sale directly to the customer at a price lower than that which the broker was authorized to negotiate for; and (2) where the broker procures a person who is unwilling to pay the stipulated price, but makes a counter offer which is accepted by the owner. Recovery is allowed on the theory that the owner, by his interruption of the broker's negotiations or by acceptance of the counter offer, has deprived the broker of the opportunity to bring his customer up to the authorized price, and hence that he has waived the price requirement stipulated in his contract with the broker. Dancy v. Baker, supra, 89 So. 590.
Here, although the cause of action stated by Moylan was on an express contract of employment by Mrs. Estes to find a purchaser for her property, the record is devoid of any showing of such an express contract of employment. The only express contract shown by the record was that contained in the old contract, referred to above, which was not sued upon  and understandably so. Mrs. Estes stated in her affidavit that the old contract "expressed the only contract of any nature ever had with the said Moylan relative to any lands of affiant." Moylan does not controvert this statement; in fact, Moylan's affidavit shows nothing more than that he was the middleman between Mrs. Estes and his customer, Shuey, in negotiating the old contract. He performed services in this respect, for which Mrs. Estes agreed to compensate him if the contract was consummated. The contract was not consummated, so her liability under it never matured. He took no part in the execution of the new contract. It goes without saying that, as in the case of any other employment contract, a broker cannot recover for his services unless they were performed at the express or implied request of the alleged employer. This is true even though the owner of property finds a purchaser for that property through information furnished to him by the broker. City Builders Finance Co. v. Stahl, 1925, 90 Fla. *366 357, 106 So. 77. "There must be a meeting of the minds of the parties; the principal must intend that the broker act for him and the broker must intend to accept the authority to act and that intention may be expressed in words or by the conduct of the parties." 5 Fla.Jur., Brokers, Sec. 15, p. 35. Whether the circumstances here would support a suit on an implied contract to recover the reasonable value of Moylan's services need not be decided, since no such issue was made by the pleadings. Cf. Foley-Carter Ins. Co., Inc., v. Commonwealth Life Ins. Co., 5 Cir., 1942, 128 F.2d 718.
In the absence, then, of any showing of a contract of employment between Mrs. Estes and Moylan, the rule of Taylor v. Dorsey, supra, is not applicable; and no other basis for recovery under the facts shown by the record in support of the cause of action stated, has been suggested. We hold, therefore, that it was error to enter summary judgment in favor of Moylan.
This makes it unnecessary to decide whether the summary judgment was improperly entered, in view of the issue made by Mrs. Estes' answer (and not met by the affidavits) to the effect that Moylan forfeited any right to a commission by failing to disclose to her that Maule would have purchased the entire tract in accordance with the terms of the old contract (which Mrs. Estes stated she desired to do) if she had refused to enter into the new agreement.
It is also unnecessary to decide whether the rule of Taylor v. Dorsey, even if otherwise applicable, would apply to a situation where the counter offer accepted by the owner covered only a portion of the contract which the broker was employed to find a purchaser for. Cf. 8 Am.Jur., Brokers, Sec. 178, p. 1094; Varn v. Pelot, 55 Fla. 357, 45 So. 1015.
There being no genuine issue of any material fact on the question of Mrs. Estes' liability on the cause of action stated by Moylan, she was entitled to have a summary judgment entered in her favor.
The judgment appealed from is reversed, with directions to enter summary judgment in favor of Mrs. Estes, but without prejudice to the right of Moylan to sue on an implied contract, if he deems such action advisable.
Reversed with directions.
TERRELL, C.J., and HOBSON, DREW, THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., dissents.