THOMAS, Justice.[1]
In their complaint the petitioners describe a transaction between themselves on the one part and respondent on the other part which they claimed constituted a contrivance to circumvent the law against usury. They asked the court to impose penalties against the respondent, to award them a money decree for $3,150, to declare them sole owners of certain property and to declare void a warranty deed and agreement for deed.
Petitioners and respondent filed motions for summary decree and supported them with affidavits, or depositions. The chancellor entered a partial summary decree in which he held that the transaction was not infected with usury, and he retained jurisdiction for the purpose of resolving other questions, presented by the litigation, with which we are not presently concerned. Before discussing further the chancellor’s decree, we will undertake to digest the deal to which petitioners and respondent were parties. Inasmuch as all negotiations were conducted by James J. Mears on behalf of himself and his wife and by Jacob Mayblum on his own behalf, we will simplify to some extent our analysis by referring hereafter to the petitioners as “Mears” and the respondent as “Mayblum.”
Mears told Mayblum he wished to invest some money in property that would yield an income and Mayblum put Mears in touch with one Samuel Sklar from whom Mears eventually purchased the Treasure Island Apartments. The purchase price was $225,000. The property was encumbered by an outstanding mortgage of $135,000 which Mears assumed. The seller agreed to take for his interest $50,000 in cash, and a second mortgage for $40,000. Mears had only $38,000 and it was because of his need of $12,000 to make the cash payment that Mayblum got into the act. These two entered into a memorandum agreement containing a recital that Mears was contracting the same day to purchase the property, and that it was the desire of both that May-blum should buy a one-third interest at the time of closing, which Mears should have the option of repurchasing from Mayblum.
, Under the terms set out in the instrument Mayblum was to pay Mears for the third interest, in “advance” of the receipt of title by Mears from Sklar, the sum of $12,000, the precise amount needed by Mears to make up the cash payment. Immediately upon receipt by Mears of the deed from Sklar, Mears was to convey a third interest to Mayblum and Mayblum was, “simultaneously,” to give Mears the right to repurchase the one-third interest. It was stipulated that “Mears will agree to re-purchase” the one-third interest for $15,000 to be paid at the rate of $350 a month for eleven months and $11,150 on the twelfth month. Following these terms appeared the statement that Mears, in the event he decided at the end of the twelve-month period “not to retire and re-purchase” the interest of Mayblum by making the final payment, would have the “further option” *225 of paying Mayblum the balance of $11,150 at the rate of $350 monthly with interest at ten per cent.
It is Mears’ contention that, in effect, all this meant that Mayblum lent Mears $12,000 talcing as security a third interest in property in which the buyer, or borrower, was to have a cash investment of $50,000, $38,000 of which was his own money, and that an attempt was made to bind the borrower to start repaying the loan at the end of the first month, and to continue for ten months afterward with the option only of extending the final payment and discharging it at the rate of $350 monthly with a handsome return to the lender of ten per cent in interest on these deferred payments.
It is well to give the relative dates of the four instruments reflecting the transaction. The memorandum agreement was signed 15 November 1955; it was put into more formal attire and called an agreement for deed 15 December 1955; Slclar delivered a deed conveying the whole property to Mears and his wife 16 December 1955; these grantees conveyed the one-third interest to Mayblum 17 December 1955.
We think the deed given by Mears and wife to Mayblum was an instrument designed to secure a debt and regardless of its title was a mortgage under the provisions of Sec. 697.01. That this was its true character is evident from a comparison of the dates of the agreement for deed and the deeds themselves. Markell v. Hilpert, 140 Fla. 842, 192 So. 392. In these circumstances to consider Mayblum a seller of land as distinguished from a lender of money requires credulity we do not possess. Mayblum’s goings on were an attempt, albeit a clever one, to reap profits from a usurious transaction.
Mayblum refers more than once to the option of Mears to repurchase the third interest. Although there was mention of an option in the memorandum of agreement, we have found no provision in the formal agreement for deed that supersedes it which resembles an option that Mears could or could not exercise. In the preliminary memorandum it was stated: “Mayblum will simultaneously [with the conveyance of a third interest by Mears to Mayblum] grant unto Mears, the right to re-purchase * * * and Mears will agree to re-purchase said interest” by paying the amount of $15,000 on the terms already related.
When this memorandum was translated into an agreement for deed it was provided that Mayblum was bound to sell, and Mears to buy, the third interest for the amount and on the terms we have already specified and that upon payment of $15,000 Mayblum would reconvey to Mears. It was expressly stated that if this amount should be paid by the end of the year, no interest would be charged but that Mears would pay interest at the rate of ten per cent on deferred payments beyond that .time if Mears chose to discharge the balance in installments, and it was provided in the instrument that if any payment should remain in default for 30 days the contract could be terminated at the option of Mayblum but that the parties could “exercise any remedies available to them in law or in equity * * Clements v. Leonard, Fla., 70 So.2d 840.
We repeat, for emphasis, that this agreement was executed the day before Sklar conveyed to Mears and two days before Mears conveyed to Mayblum.
Mayblum, obviously, was putting himself in the position of exacting usurious interest from Mears for advancing $12,000 so Mears could make the first payment on the property. This conclusion is justified by our decison in Burket v. Johnson, Fla., 61 So.2d 197, where we dealt with a transaction similar to the one involved in this case.
We are aware of no occasion to restate the law with reference to our refusal to interfere with findings of fact by a chancellor unless it appears that he has clearly erred. Our conclusion in this case is based on facts which are not in dispute and upon *226 our construction of the four instruments we have described. We differ with the chancellor only upon questions of law. The circumstances surrounding the transaction between Mears and Mayblum and the instruments executed by these parties present an arrangement which we think was a “contrivance” to circumvent the statutes penalizing usury.
We revert to the decree. The chancellor first announced that the transaction between Mears and Mayblum was not usurious. He then observed that the memorandum agreement contained no “binding promise” that Mears would repurchase the one-third interest from Mayblum. This statement was accurate but in making it the chancellor did not taire account of the later agreement for deed. His next statement, that he did not know whether or not there was a subsequent option from May-blum to Mears but that this would “be dealt with subsequently” is fallacious for the same reason.
We have concluded from the record in this case that the chancellor had before him testimony and evidence sufficient for the entry of a final decree resolving all the issues, and that there was no reason to anticipate a subsequent “option” which, as the name implies, would be a privilege to buy and not an obligation to do so.
The chancellor further observed that if “the transaction required a construction that it was never anything but a loan from Mayblum to Mears, [he] would find that there was no wilful violation of the usury statute.” He did not indicate what statute he had in mind in his statement with reference to the lack of wilfulness. By Sec. 687.07 a penalty is imposed for lending money and wilfully and knowingly charging or accepting a “sum of money greater than the sum of money loaned, and an additional sum of money equal to twenty-five per cent per annum upon the principal sum loaned, by any * * * contrivance * * * directly or indirectly * * A person violating this statute must forfeit the principal and interest and is subject to criminal prosecution. (Italics supplied.)
The appellee seems not to have violated this law because the amount he was to receive was exactly the sum of the money loaned and twenty-five per cent interest, and not an amount greater than the sum of the loan and interest of twenty-five per cent per annum.
He did violate Sec. 687.03 making it unlawful to charge interest of more than ten per cent per annum by any “contrivance or device,” and should be penalized under Sec. 687.04 for the infraction. (Italics supplied.) Shorr v. Skafte, Fla., 90 So.2d 604.
We have not found in the record presented to us any bases in the pleadings or the evidence for the comment of the chancellor that if he had felt obliged to hold that the transaction was a loan he would have decided, in effect, that appellee was so ignorant of the usury laws that he should be excused if he had transgressed them.
The petition is granted and the partial summary decree is quashed with directions to enter a decree, in accordance with the views we have expressed, finally disposing of the litigation.
TERRELL, C. J., THORNAL, J„ and PARKS, Associate Justice, concur.

. Statutory references relate to Florida Statutes 1965, and F.S.A.