252 So.2d 805 (1971)
Frank J. SHARP, Appellant,
v.
Paul L. DIXON and Ann C. Dixon, Appellees.
No. 70-805.
District Court of Appeal of Florida, Fourth District.
September 27, 1971.
Charles Davis, and Stephen P. Kanar, of Fishback, Davis, Dominick & Simonet, Orlando, for appellant.
Arthur L. Steed, of Steed & Collins, Orlando, for appellees.
CROSS, Judge.
Appellant-defendant, Frank J. Sharp, appeals a final judgment entered in favor of appellees-plaintiffs, Paul L. Dixon and Ann C. Dixon, in an action on a promissory *806 note which was alleged by defendant to be usurious. We reverse.
On October 20, 1969, defendant executed a promissory note in favor of the plaintiffs in the amount of $10,700, payable December 15, 1969, with interest at the rate of eight per cent per annum. Defendant having failed to pay the note or any part thereof, plaintiffs instituted suit for the face value of the note, together with interest and attorneys' fees. The complaint was subsequently amended in which the principal sum of $10,700 was reduced to $10,000.
Defendant answered and counterclaimed. The answer set up as a defense that the note was usurious. The counterclaim sought cancellation of the note on the ground of usury. The trial court entered final judgment in favor of the plaintiffs and against the defendant in the sum of $10,000, plus interest and attorneys' fees. The final judgment recited:
"* * * Defendant failed to carry the burden of proving by competent evidence the allegations contained in the counterclaim, and the Court further finds that there is insufficient evidence that the Plaintiffs were guilty of willfully and knowingly charging or accepting any sum of money greater than the sum of money loaned plus a sum in excess of 25 per cent per annum, and that there was no intent on the part of the plaintiffs to take any advantage of the defendant, * * * and that, therefore, there was no usury in this contract under Florida Statute 687.07 [F.S.A.]."[1] (Footnote added.)
From said final judgment this appeal followed.
The primary thrust of the appeal is whether the necessary intent was shown to constitute a violation of the usury statute.
Four elements must exist to constitute a usurious transaction: (1) there must be a loan, express or implied; (2) there must be an understanding between the parties that the money lent shall be returned; (3) it must appear that for such loan a greater rate of interest than is allowed by law has been or is to be paid or was agreed to be paid; and (4) there must exist an intent willfully and knowingly to take more than the legal rate for the use of the money loaned. See Stewart v. Nangle, Fla.App. 1958, 103 So.2d 649. Only the fourth element is in contention here, the existence of the first three being without dispute.
Florida courts have long recognized that usury is largely a matter of intent and is not fully determined by the fact of whether the lender actually receives interest in excess of that permitted by law, but whether it was the lender's purpose to receive excessive interest on the money loaned. To work a forfeiture the lender must willfully and knowingly charge or accept more than the amount of interest allowed by statute.[2] Clark v. Grey, 1931, 101 Fla. 1058, 132 So. 832; Benson v. First Trust & Savings Bank, 1931, 105 Fla. 135, 134 So. 493; modified on rehearing, 105 Fla. 150, 142 So. 887, aff'd on second rehearing, 105 Fla. 168, 145 So. 182; Chandler v. Kendrick, 1933, 108 Fla. 450, 146 So. 551; Jones v. Hammock, 1937, 131 Fla. *807 321, 179 So. 674; Stewart v. Nangle, supra; Shaffran v. Holness, Fla.App. 1958, 102 So.2d 35.
In River Hills, Inc. v. Edwards, Fla. App. 1966, 190 So.2d 415, the court stated:
"* * * [T]he question of intent is to be gathered from the circumstances surrounding the entire transaction (See Diversified Enterprises, Inc. v. West, Fla.App., 141 So.2d 27, 31; Kay v. Amendola, Fla.App., 129 So.2d 170).
"5. That the lender willfully and with corrupt intent charged or accepted more than the prohibited interest must be specifically and affirmatively pleaded and established by clear and satisfactory evidence. [Citations omitted.] The requisite corrupt or purposeful intent, however, is satisfactorily proved if the evidence establishes that the charging or receiving of excessive interest was done with the knowledge of the lender. [Emphasis in the original.]
"The presumption of lawful purpose and proper intent on the part of the lender dissolved upon the showing that the excess interest was knowingly and intentionally charged, and the burden then shifted to him to explain away all inferences of corrupt intent. * * * To put the borrower to the task of proving, subjectively, the lender's culpable mental processes at the time the loan contract was entered would place an impossible burden upon the borrower and frustrate the purposes of the statute."
The United States Court of Appeals for the Fifth Circuit in American Acceptance Corp. v. Schoenthaler, 5 Cir.1968, 391 F.2d 64, cert. denied 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387, applied the Florida usury statutes as construed by the Florida courts in a like manner, citing Shorr v. Skafte, Fla. 1956, 90 So.2d 604. In Shorr, the plaintiff lender contended, as here, that the parties innocently entered into the transaction, and that no forfeiture should be imposed although an excessive rate of interest was charged, because the parties were unaware of the violation and therefore the excessive charge was not made willfully and knowingly.[3] The Florida Supreme Court rejected such contention, stating:
"The ignorance of the borrower is of small consequence; the important factor is the willfulness of the lender. And the matter of willfulness is not absolutely closed by the bare statement of the lender that he was unconscious of wrongdoing. If such were the law the prohibition would amount to nothing. The circumstances must be taken into account * * If we were to accept the view that the computation [of the interest] even if comprehended by the lender was meaningless because the statute was unknown to him, we would subscribe to the rule that ignorance of the law is a complete defense to usury and that the irrefutable statement of that ignorance would relieve a would-be usurer from any penalty for his transgression. Certainly a man's actions are indicia of his intentions. Although it is not conclusive the fact that the amount stated in the note is greater than the amount loaned evidences the intent to violate the law. No evidence having been offered by way of explanation the view that infraction was intended is justified." (Emphasis added.)
In the case sub judice, it is undisputed that $700 of the $10,700 note constituted a "bonus" to the plaintiffs. The principal and bonus bore interest at the rate of eight per cent per annum. The principal sum of the note with interest was payable in fifty-six days. Thus, the rate of interest was actually in excess of fifty per cent computed as follows: the $700 "bonus" is equivalent to seven per cent interest for fifty-six days. Projected over a yearly *808 period, the interest is equivalent to 46.5 per cent per annum. The interest as provided on the face of the note is eight per cent per annum. Adding the interest the note bore to the bonus, it readily becomes apparent the note is within the ambit of Florida Statute 687.071 (1969), F.S.A. Speier v. Monnah Park Block Company, Fla. 1955, 84 So.2d 697.
Whether the note is a valid obligation or whether it is unenforceable under § 687.071(7) depends, as above stated, upon the lender's intent at the time the note was executed by the parties. The fact that plaintiffs (the lenders) by their amended complaint did not seek to collect the $700 "bonus" does not purge the transaction of its usurious taint.
The general rule as to the usurious nature of a contract is determined or determinable at the contract's inception. To attribute a decisive effect to the actual scope of an obligee's demands as opposed to the amount which a contract purports to precipitate to maturity would frustrate the application of the guiding principle delineated. Home Credit Co. v. Brown, Fla. 1962, 148 So.2d 257. The only evidence in the instant case of the plaintiff-lenders' intent at the time the note was executed by the parties is that of plaintiff Paul L. Dixon that he was unaware at the time of the transaction of any violation of the usury statute.
The trial court has apparently construed the intent element of the offense of usury to require an intent to violate the statute rather than an intent to charge an amount of interest in excess of that prohibited by statute. Curtiss National Bank of Miami Springs v. Solomon, Fla.App. 1971, 243 So.2d 475.
Accordingly, the final judgment is reversed and the cause remanded for determination as to whether the lenders had an intent to charge or receive excessive interest at the time of the execution of the note.
Reversed and remanded for further proceedings consistent with the views herein expressed.
WALDEN, J., concurs.
OWEN, J., dissents, with opinion.
OWEN, Judge (dissenting):
The majority opinion authored by Judge Cross accurately reflects the law as I understand it. My departure relates solely to the appellate conclusion that the judgment must be reversed in order that the trial court's factual determination of the lenders' intent be reconsidered.
The trial court, as the fact finder, having considered all of the circumstances of the transaction, specifically found that the defendant (upon whom the burden of proof rested) had failed to establish that the plaintiffs were guilty of wilfully and knowingly violating the criminal usury statute. It is undeniable that appellees intended to receive a $700 bonus for the use of their money for approximately 56 days. Simple arithmetic readily establishes that this amount, if considered as interest, yields a rate of return prohibited by the Criminal Usury Statute. Thus, if the fact finder's only proper sphere of inquiry in determining lenders' intent is whether the lender intended the contract to say that which it clearly did say, we can determine here without remanding for further consideration that the lenders intended to charge usurious interest. But if the fact finder may inquire into all of the circumstances of the transaction in order to determine whether there was a corrupt intent or bad faith on the part of the lender, the trial court appears to have already done so, and hence, ought not have to do so again.
This case presents a good example of why the question of the lenders' corrupt intent should be determined from all of the circumstances surrounding the transaction, rather than being determined by an inflexible *809 rule which measures the mathematical result and limits the inquiry to whether the lender intended the transaction to produce such result. Mr. Sharp was not a necessitous debtor at the mercy of a shylock. Instead, he is a successful businessman and property owner who desired to purchase some property shown him by Mr. Dixon, a real estate salesman. Mr. Sharp gave his check for $10,000 as a deposit on the purchase price, and immediately, even without the transaction having been closed, authorized Mr. Dixon to list the property for resale at a higher figure. Since Mr. Sharp could not conveniently cover the check which he gave as a deposit, he asked Mr. Dixon to lend him $10,000 for a period of sixty (60) days, offering a $500 bonus. Mr. Dixon declined on the grounds that he had no such funds to lend, but suggested that he would make inquiry of his wife who owned some Coca Cola stock. Mrs. Dixon expressed a lack of interest. Eventually, however, because of Mr. Sharp's imploring and because of the many years of friendship between him and Mr. Dixon, she agreed to pledge her stock at the bank in order to secure $10,000 to lend Mr. Sharp, after the latter had agreed to increase the bonus to $700. Before the loan was consummated, the Dixons suggested that they should consult their lawyer, but Mr. Sharp persuaded them to forego the securing of legal advice as it would simply cause the Dixons to incur an unnecessary expense. Mr. and Mrs. Dixon borrowed $10,000 from the bank at 8% and turned this sum over to Mr. Sharp who prepared and delivered to them a promissory note for $10,700 at 8%, payable 56 days later.
The trial court found that the entire transaction was engineered by appellant. He has the Dixons' $10,000, for which he has never paid a cent, either by way of interest or the promised bonus. It strikes me as a grave miscarriage of justice if under the facts of this case the Dixons must lose their $10,000 because of the application of the Criminal Usury Statute. Such a result would make one wonder as to just "who is the victim" in this transaction. The shield to protect the innocent or necessitous borrower ought not have law's sanction to become a sword in the hands of the crafty or shrewd borrower. The avarice of the Dixons led them into the transaction, but avarice and corrupt intent are not necessarily synonomous. The trial court found that they did not have the latter in entering the transaction, and I would be inclined to leave it at that as a just resolution of the controversy. Accordingly, in my view, the judgment should be affirmed.
NOTES
[1] Florida Statute 687.07, F.S.A. was repealed by ch. 69-135, Laws of Florida 1969, effective October 1, 1969. Section 687.071 added by ch. 69-135, became effective October 1, 1969. In the case sub judice, complaint was filed February 6, 1970; final judgment entered September 18, 1970.
[2] See Florida Statute 687.071 (1969), F.S.A. This statute, known as the Criminal Usury Statute, prescribes criminal penalties for "willfully and knowingly" charging or receiving interest exceeding 25 per cent, and provides that in such a case the entire debt, principal and interest, shall be unenforceable. See Comment, Usury: What Constitutes Willful Violation of the Statute, 11 U.Fla.L.Rev. 384, 385 (1958).
[3] Shorr v. Skafte, supra, arose as a suit to foreclose a mortgage. The primary issue there, however, was whether the mortgagee had willfully and knowingly charged excessive interest on the promissory note secured by the mortgage.