No. 80-411

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

DALE A. BOLZ and JUDY A. BOLZ,

Plaintiffs and Respondents,

vs.

MASON MYERS,

Defendant and Appellant.

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of Flathead
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

For Appellant:

Hash, Jellison, O'Brien and Bartlett, Kalispell, Montana
Kenneth E. O'Brien argued, Kalispell, Montana

For Respondents:

James Cumming argued, Columbia Falls, Montana

Submitted: June 21, 1982

Decided: September 14, 1982

Filed: **SEP 14 1982**

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant Mason Myers appeals from an order and judgment of the District Court of the Eleventh Judicial District, Flathead County, the order finding him in contempt of court, and the judgment awarding plaintiffs $25,802.50 in actual damages plus $5,000 in exemplary damages. We affirm in part and reverse in part.

This dispute began in mid-August of 1978, when Dale Bolz went to the home of Mason Myers to discuss the purchase by Bolz of the Kalispell Hearing Aid Center (KHAC). Also at the meeting were Merle Myers and Michael Myers, wife and son respectively of the defendant. At that meeting, agreement was reached on a purchase price--$10,000 for KHAC and $20,000 for the building. There was no discussion at that time of any covenant by Mason not to compete.

Bolz returned to the Myers household on August 31 with two buy-sell agreements. Dale and Judy Bolz are shown as purchasers, and Merle and Michael Myers as sellers in the agreement of the sale of the building.

The document for the sale of the business was signed only by Merle Myers as seller. That agreement apportions $2,000 of the purchase price "toward the agreement not to compete in the hearing industry within a 20 mile radius of Kalispell, Montana."

Neither instrument was signed by Mason Myers. He told Bolz at that time that he was not the owner of either entity, and therefore could not sign. Bolz expressed a concern as to what would keep Myers from going into competition with him, and Myers gave him an oral assurance that he had no intent to do so.

Thereafter, the parties agreed that the sale would not

-2-

become final until January 1, 1979, because of Mason Myers' income tax considerations. In the meantime, arrangements were made in accordance with the buy-sell agreement for Bolz to work out of the KHAC office and to be trained by Mason Myers to operate the business and to service clients. Bolz paid rent of $100 per month.

After the signing, attempts were made by Bolz to have a comprehensive sale document prepared to complete the terms of those instruments signed on August 31. Counsel was obtained by both parties and a series of proposed contracts was exchanged, none of which was found satisfactory between the parties. It is clear from several of the contracts proposed by Myers' attorney that Mason was considered the owner of KHAC.

In December of 1978, Merle and Michael refused to close the sale without some sort of approval from Mason. At about the same time, Mason informed Bolz that he intended to continue in business in competition with Bolz. Arrangements were made by Mason to open a hearing aid business near KHAC, to be run by James and Karen Myers, son and daughter-in-law of Mason. These plans were kept secret from Bolz until he had paid the full purchase price to Merle and Michael. That occurred on March 9, 1979. James and Karen opened their business on April 15.

Meanwhile, on February 13, 1979, Bolz brought this action. Following a show-cause hearing on Bolz's request for injunctive relief, the District Court issued a temporary injunction, dated March 23, enjoining Myers from committing the following acts:

"1. Informing Plaintiff's suppliers that Plaintiff's credit is poor.

"2. Indicating to potential customers of Plaintiff's that Plaintiffs are incompetent or untrustworthy.

"3. Indicating to potential customers of Plaintiff's that Defendant had never heard of Plaintiffs.

"4. Directing customers to Plaintiff's competitors.

"5. Not informing Plaintiffs of those potential customers responding to Plaintiffs advertising and promotions.

"6. Threatening Plaintiffs with driving Plaintiffs out of business.

"7. Refusing to hold Plaintiff's mail for the Plaintiffs.

"8. Falsely reporting to business associates of Plaintiffs that Plaintiffs had refused to accept Defendant's offer to sell for cash.

"9. Use of the name 'Kalispell Hearing Aid Center.'

"10. Carrying on a business in competition with the Plaintiffs within a twenty (20) mile radius of Kalispell, Montana."

On May 7, Bolz filed a petition seeking to hold Myers in contempt of the court's order. Earlier, at the time the purchase was consummated, Bolz had offered to drop his damage action against Myers if Myers would agree not to compete, but Myers refused. The trial ensued on all issues, resulting in a permanent injunction against Mason Myers, a finding of contempt and the award of damages.

The issues on appeal, listed in the order we will deal with them, raise questions as to whether the District Court erred:

1. By finding that Myers breached the August 30 contract and interfered with contract rights held by Bolz?

2. By granting either a temporary or permanent injunction against Mason Myers' competing in the hearing aid business against Bolz?

3. By finding Myers in contempt of its March 23 order?

-4-

4. In any aspect of its award of damages?

Initially, it is important to consider the District Court's finding that Myers "was a true owner of said business [KHAC] from their first negotiations in mid-August of 1978." That is the linchpin finding in this case and there is substantial evidence in the record to support it. Myers held himself out as the true owner at the mid-August meeting, and he conducted all negotiations for the sale. All later negotiations in regard to preparation of a comprehensive sale document were likewise conducted by Myers. As noted, several of the contracts prepared by Myers' attorney and exchanged as part of this process denominate Mason Myers as the seller of KHAC. These factors, along with Myers' efforts to acquaint Bolz with routes, customers, and contacts, are adequate to substantiate the court's finding. It will not be set aside unless clearly erroneous. Rule 52(a), M.R.Civ.P.

Having made that determination, one which clearly comports with the reality, we move on to the legal issues.

BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE

The general rule is that the tort of intentional interference with contractual or business relationships may be committed only by strangers to the relationships. Restatement (Second) of Torts § 766A (1977) provides:

> "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive and burdensome is subject to liability to the other for the pecuniary loss resulting to him."

In Phillips v. Montana Education Association (1980), ___ Mont. _____, 610 P.2d 154, 37 St.Rep. 821, we recognized

-5-

the rule that imposes upon strangers to a contract a duty not to interfere with its performance.

In this case the District Court determined, in its conclusion of law no. 13, that Mason Myers breached the August 31, 1978 contract with Bolz, and "[interfered] with Bolz' contract rights against Michael and Merle Myers" to cause loss to Bolz. These two bases of liability are incompatible. On the one hand the District Court concluded that Mason committed a breach of contract, which could only mean that Mason was a party to the contract, and bound to perform it. On the other hand, the District Court found "interference" by Mason with Bolz' contract with others. Interference can give rise to tort liability only if one intentionally intermeddles with another's contractual or business relations to which the one is a stranger. Restatement (Second) of Torts § 766A, supra; Phillips v. Montana Education Association, supra; Pelton v. Markegard (1978), 179 Mont. 102, 586 P.2d 306; Taylor v. Anaconda Federal Credit Union (1976), 170 Mont. 51, 550 P.2d 151; Quinlivan v. Brown Oil Co. (1934), 96 Mont. 147, 29 P.2d 374; Burden v. Elling State Bank (1926), 76 Mont. 24, 245 P. 958. Myers cannot be at one time on the same facts liable for breach of contract to which he is a party, and also liable for the tort of intentional interference in not performing that contract.

Under the court's findings, Michael and Merle Myers were merely contractual figureheads in the place of Mason Myers. Therefore Mason could not be liable for intentional interference with Bolz's contractual rights with Merle and Michael Myers. Mason was not a stranger to that contract. If Mason's actions constituted only a breach of contract with Bolz, then Bolz's remedy is for breach of the contract and not for the tort of intentional interference.

-6-

The distinction to be made here on the facts as found
by the court is that Mason breached his contract with Bolz;
but he also went further and intentionally interfered with
Bolz's business relationships with third parties, who were
Bolz's customers or potential customers.

We have here nearly the same situation that faced the
Washington Supreme Court in Cherberg v. Peoples National
Bank of Washington (1977), 88 Wash.2d 595, 564 P.2d 1137.
There a landlord with a duty to repair premises under lease
to the plaintiff willfully failed to make repairs. The
landlord was sued by the tenant for the tort of intentional
interference. The Washington court referred to other cases
which had held the injured party to be limited to an action
for breach of contract, even though the breach of duty under
a lease or contract necessarily interfered with the injured
party's business relations with third parties. The Washington
court nonetheless in Cherberg held in effect that the
landlord's actions were not "privileged" and were therefore
a basis for liability in tort.

In a later case, the Washington Supreme Court explained
further its holding in Cherberg, saying:

> "Although the parties to that lawsuit were also
> parties to a contract, it was not that contract
> upon which the claim of interference was based.
> We held in that case that the defendant's intentional
> and outrageous action in breaching that contract
> interfered with the business relationship that
> the plaintiffs had with their customers. The
> defendant was a third party as to that relationship,
> and thus not subject to contractual actions based
> upon it." Houser v. City of Redmond (1978), 91
> Wash.2d 36, 586 P.2d 482, 485.

The Restatement (Second) of Torts § 767 (1977) sets
out factors to be considered in determining whether intentional
interference with contractual rights is "improper." (The
Restatement talks of "improper" actions in these cases

-7-

because its rule for liability requires interference by the actor both "intentionally and improperly." Section 766A, supra.) Those factors are: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and, (g) the relations between the parties.

The outrageous acts of Mason Myers are improper, considering all such factors. In addition to breaching his contract to sell the business of KHAC, he went far out of his way during and after the transfer of the business to destroy Bolz's business relationships with customers: interference with Bolz's mail, denying to others that Bolz had an interest in KHAC, false advertising, misrepresenting Bolz's credit record, declaring Bolz to be an imposter to others, denying Bolz's competency, using his position on the State Board of Hearing Aid Dispensors to harrass Bolz and much else.

In order to establish a prima facie case of interference with contractual or business relations, it must be shown that the acts (1) were intentional and willful, (2) were calculated to cause damage to the plaintiff in his or her business, (3) were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor, and (4) that actual damages and loss resulted. Bermil Corp. v. Sawyer (Fla. App. 3rd Cir. 1977), 353 So.2d 579.

Thus on the facts in this case, it is established that Mason Myers not only breached his contract with Bolz, but

Mason went further and intentionally interfered with Bolz's contractual or business relationships with third parties. It is of no consequence that the District Court had concluded that the intentional interference had been "with Michael and Merle Mason." The conclusion of the District Court that intentional interference had occurred was correct, and it is immaterial what reasons the District Court gave for the conclusion. Fergus County v. Osweiler (1938), 107 Mont. 466, 86 P.2d 410, 120 A.L.R. 1457; Johnstone v. Sanborn (1960), 138 Mont. 467, 358 P.2d 399. We therefore uphold the view of the District Court that Mason Myers had committed a tort of intentional interference with Bolz's contractual relationships.

INJUNCTION

Mason Myers also appeals from the issuance by the District Court of an injunction against him on March 23, 1979, enjoining him from committing the acts which we have heretofore enumerated.

Mason's contentions that the injunction was improper is directed mainly to the anti-competitive provision of the purchase contract. He contends that section 28-2-703, MCA, forbids any restraint of business; that the exception found in section 28-2-704, MCA, does not apply to him because he was not a seller under the contract; and that Merle Myers, his wife, who did sign the contract, could not bind Mason not to compete in business against Bolz.

As we indicated, the District Court found that Mason Myers was a true owner of KHAC, and that the goodwill of KHAC was included in the assets sold, and that Mason is bound by all the terms of the contract signed by Bolz and Merle on August 31, 1978.

It is true that section 28-2-703, MCA, makes void contracts which restrain anyone from exercising a lawful profession, trade, or business. It is also true that where the goodwill of a business is sold, section 28-2-704, MCA, allows a contract to contain a provision that the seller will not carry on a similar business within a specified county, city or part thereof so long as the buyer carries on a like business therein. This Court requires strict compliance with these statutes. J. T. Miller Co. v. Madel (1978), 176 Mont. 49, 52, 575 P.2d 1321, 1323.

The contract required Mason Myers, as seller, not to carry on a business in competition with Bolz within a 20 mile radius of Kalispell, Montana. This provision is within the statutory exception provided in section 28-2-704, MCA, unless the 20 mile radius from Kalispell would encompass a portion of a county other than Flathead, the county in which Kalispell is located. No attempt was made by Mason to demonstrate that the 20 mile radius exceeded the county boundaries.

Mason's contentions that he was not the seller and therefore not bound by the agreement not to compete are of course overridden by the findings of the District Court which found him to be the true owner and seller of KHAC. It was proper, therefore, for the District Court to enjoin Mason from violating his contractual obligations in attempting to carry on a business in competition with Bolz within the area specified.

Even so, Mason contends that if he were the true owner of KHAC, then his wife Merle had no power to bind him to a provision not to compete and that the statutes of frauds (sections 28-2-903(1)(d), 30-2-201, and 30-11-210, MCA)

-10-

operate to bar his liability on the contract. The District Court met this objection by concluding that Mason Myers had ratified the contract by his conduct in this case.

We have held that a principal who accepts the benefits of an agency transaction cannot later deny the agency, that the principal ratifies the transaction by receiving the benefits, and he is estopped to deny the agency. First National Bank of Miles City v. Nunn (1981), ___ Mont. ____, 628 P.2d 1110, 1116, 38 St.Rep. 869. Under the statute of frauds, it is true that ratification itself may be required to be in writing. 72 Am.Jur.2d p. 913-914, Statute of Frauds, § 389. It is clear that when the District Court here spoke of "ratification" it had in mind the equitable principle that the statute of frauds may not itself be an instrument of fraud or used to cloak fraud. 73 Am.Jur.2d p. 198, 199, Statute of Frauds, § 562. The statute is intended to prevent fraud, not aid it. Equity may restrain interference with rights acquired under a contract sufficiently or wholly performed. 73 Am.Jur.2d p. 200, Statute of Frauds, § 563. The fraud against which the courts will grant relief, notwithstanding the statute of frauds, includes situations such as this, where the buyer has made an irretrievable change in position, or the defendant has secured an unconscionable advantage or inflicted an unjust and unconscionable loss upon the plaintiff. This is more than the mere moral wrong involved in the refusal to perform a contract which by reason of the statute of frauds cannot be enforced. 73 Am.Jur.2d p. 202, Statute of Frauds, § 564. The rule is based upon principles of estoppel.

For the same reasons, Mason Myers' reliance upon section 28-10-203, MCA, which requires that ". . . authority to

-11-

enter into a contract required by law to be in writing can only be given by an instrument in writing" is misplaced.

We find that the District Court properly issued the injunction against Mason Myers.

CONTEMPT

Under section 3-1-523, MCA, the District Court's contempt judgment is final and conclusive. It can be reviewed on a writ of certiorari, but there is no appeal. State v. State Judicial Dist. (1950), 123 Mont. 447, 453, 215 P.2d 279, 283.

DAMAGES

The District Court awarded the following items of general and special damages to the plaintiffs:

(1) Increase in interest costs because of an interest rate increase from 10 percent to 12 1/2 percent for a total of $6,212.50 during the time Mason failed to perform.

(2) Lost profits from employee sales, $4,000.00.

(3) Lost battery sales and repairs, $375.00.

(4) Lost apartment rent, $215.00.

(5) Loss of profits from December 1978 promotion, $9,000.00.

(6) Loss of walk-in sales, $3,000.00.

(7) Lost sales from delay depriving Bolz of his bargain, $3,000.00.

The total general and special damages awarded was $25,802.50. The District Court also awarded punitive damages of $5,000.00.

Mason's argument against punitive damages is that the allegations of contractual interference are not supported, and that there is no showing of willful, wanton and malicious acts on the part of Mason.

We have already explained that under the facts found by the court here, Mason was guilty of the tort of intentional

-12-

interference with the business relationships of Bolz.
Since tort is involved, exemplary damages where the defendant
has been guilty of oppression, fraud or malice, actual or
presumed, may be given in addition to actual damages.
Section 27-1-221, MCA.

In addition to the many acts found by the court that
could be construed to be oppressive or malicious, the court
further found that Mason had committed fraud on Bolz by
falsely representing that he, Mason, did not intend to
compete with Bolz and by secretly intending to establish his
son and daughter-in-law in business in competition to the
KHAC business which Mason had sold to Bolz. We will not
disturb the court's award of punitive damages.

The other elements of damages, however, need some
attention from us.

Mason Myers claims error in the award of $6,212.50
resulting from an increase in interest rates Bolz had to
assume in obtaining a loan for the purchase. Myers contends
(1) Bolz could have obtained the loan in September 1978,
instead of the following March, and (2) Bolz had agreed to a
closing date of January 1, 1979 in the contract. He also
contends the award should have been discounted to present
value. The District Court allowed the testimony of interest
rate increased cost because of misrepresentations claimed
against Myers that moved the closing date from September to
January. Mason Myers' argument that Bolz could have obtained
the loan in September regardless of Mason Myers' actions is
specious, since the loan was sought by Bolz to finance the
purchase of Myers' business. No objection was made in the
District Court to the undiscounted figure of increased
interest cost. The award on this item we therefore affirm.

-13-

We likewise affirm as substantiated in the record and as proper items of recovery, the award of $375.00 for the battery sale and repairs business lost by Bolz through the delay, and the lost apartment rentals of $215.00.

Myers attacks the award of $4,000.00 for lost profits from employee sales. Bolz had intended to employ a salesman who would have made, Bolz testified, 35 sales of hearing aids from which Bolz would have derived $158 per sale, for a total of $5,530.00. The District Court reduced this item to $4,000.00. Myers claims again that nothing prevented Bolz from hiring the employee, and that Bolz' overhead expenses were not submitted. At trial the objections raised to this evidence were lack of foundation and no foreseeability. Bolz substantiated his claim on this item through the testimony of the proposed employee. The evidence sustains the finding of the District Court.

More substantial problems arise out of the awards for lost profits from a promotional campaign advertisement and from claimed loss of walk-in sales. In the case of Stensvad v. Miners and Merchants Bank of Roundup (1982), ___ Mont. ___, 640 P.2d 1303, 39 St.Rep. 27, we said:

> ". . . Damages for loss of profits may be awarded if not speculative. Silfvast v. Asplund (1935), 99 Mont. 152, 161, 42 P.2d 452, 456. The rule that prohibits speculative profits does not apply to uncertainty as to the amount of such profits but to uncertainty or speculation as to whether the loss of profits is the result of the wrong and whether such profit would have been derived at all. Tri-tron International v. Velto (9th Cir. 1975), 525 F.2d 432, 437. Once liability is shown, that is the certainty that the damages are caused by the breach, then loss of profits on a reasonable basis for computation and the best evidence available under the circumstances will support a reasonably close estimate of the loss by a District Court. Smith v. Zepp (1977), 173 Mont. 358, 370, 567 P.2d 923, 930. But no damages are recoverable which are not clearly ascertainable both in nature and origin, and only profits

-14-

which are reasonably certain may be awarded.
Smith v. Fergus County (1934), 98 Mont. 377,
386, 39 P.2d 193, 195."

The District Court awarded Bolz $9,000.00 for loss of December 1978 promotional campaign business. The foundation for this item was the testimony of Bolz. The promotional campaign was conducted at a local shopping mall. Advertising brochures were obtained by Bolz, and gift certificates to be applied to hearing aid purchases were distributed to "leads." Because he had no office to work from, Bolz contended that he lost the benefit of these leads. There were 150 leads, and based upon national averages, he "figured" 50 sales at $489.00 per sale for a total of $24,450.00. He deducted $9,000.00 for cost of goods and promotion, leaving a lost net profit figure of $15,450.00. The District Court reduced this item to $9,000.00.

We conclude from the record that the estimate of sales lost by Bolz from the promotional effort is entirely speculative. Neither his business nor that conducted by Myers before him justified sales in that number for that period of time. There is no deduction for overhead, if he had an office to work from. We vacate the award of $9,000.00 as speculative, and place in lieu thereof the lost cost of advertising for the promotion of $500.00 as the record shows. In other words, we award Bolz what the record shows he lost in expenses for the promotion as a natural and direct item of damage flowing out of Myers' actions, and reject the contended loss of profits on that item as speculative.

The District Court further awarded Bolz $3,000.00 for loss of walk-in sales. Appellant does not directly attack this item in his briefs. It finds support in the evidence based on the experience of Bolz in the business, and is not otherwise exorbitant for the period of time involved. We sustain this item of award.

-15-

The final item of damages awarded, $3,000.00 for lost sales from delay and depriving Bolz of his bargain as of September 1, 1978, has no foundation in the record to support it. It appears to be duplicative of other awards made by the District Court. We therefore vacate that award.

Accordingly, we modify the judgment of the District Court and as modified we affirm. The District Court, on remittitur, shall enter judgment in favor of Bolz in the following sums: $6,212.50 for increased interest cost; $375.00 for lost battery sales and repairs business; $215.00 for lost rentals; $4,000.00 for lost employee sales; $500.00 for loss of promotion expenses; and $3,000.00 for loss of walk-in sales, for a total of $14,302.50 general and special damages. We also affirm the award of punitive damages.

Since appeal does not lie from a contempt conviction, we take no action on that phase of this case.

Each party shall bear his or her own costs on this appeal.

_____
John C. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

-16-

John Conway Harrison

Justices

-17-