No. 89-070

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

RANDOLPH V. PETERSON, INC.,

        Plaintiff and Appellant,

  -vs-

J.R. SIMPLOT CO., a Nevada corporation;
HARNISCHFEGER CORPORATION, a Delaware
corporation; and GOLDEN SUNLIGHT MINES,
INC., a California corporation,

        Defendants and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,
             In and for the County of Missoula,
             The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Philip D. Tawney; Mullendore & Tawney, Missoula,
        Montana
        Peter Michael Meloy, Helena, Montana

    For Respondent:

        Lawrence F. Daly ; Garlington, Lohn & Robinson,
        Missoula, Montana
        Robert J. Sullivan; Boone, Karlberg, & Haddon,
        Missoula, Montana
        Alan L. Joscelyn; Gough, Shanahan, Johnson & Waterman,
        Helena, Montana

Submitted on Briefs: June 16, 1989

Decided: August 25, 1989

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This appeal arises from an order by the District Court, Fourth Judicial District, Missoula County, granting summary judgment in favor of defendants. Plaintiff appeals. We affirm.

We restate the issues as follows:

1. Did the District Court err in granting summary judgment in favor of defendant J.R. Simplot Co.?

2. Did the District Court err in granting summary judgment in favor of defendant Harnischfeger Corporation?

3. Did the District Court err in granting summary judgment in favor of defendant Golden Sunlight Mines, Inc.?

Randolph V. Peterson, Inc. (RVP) brought suit against J. R. Simplot Co. (Simplot), alleging breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. RVP brought suit against Harnischfeger Corporation (Harnischfeger) and Golden Sunlight Mines, Inc., (Golden Sunlight) alleging, as to each defendant, tortious interference with contract and unjust enrichment.

The facts giving rise to these suits began in January 1987, when Simplot, a mining corporation operating a mine in Afton, Wyoming, began inquiries with various companies regarding the purchase of a new mining shovel. In 1979 Simplot had purchased a new electric mining shovel from Harnischfeger, a manufacturer and dealer in heavy equipment. Thus Simplot began discussions with Harnischfeger regarding the purchase of a new hydraulic shovel in January 1987. These discussions included the possibility of trading in the old shovel for credit on a new one.

Golden Sunlight is a mining company operating near Whitehall, Montana. It also began negotiations with Harnischfeger in January 1987 regarding the purchase of a new

2

mining shovel. Golden Sunlight requested a quote on a new mining shovel and this information was sent to Golden Sunlight on February 2, 1987. In early April 1987 Golden Sunlight indicated to Harnischfeger that the company might be interested in a used shovel, so on April 8 Harnischfeger sent Golden Sunlight information about three used shovels, including the one owned by Simplot.

RVP is a heavy equipment broker, based in Missoula, Montana. In March of 1987, RVP contacted Simplot with an offer to market Simplot's used mining shovel. The original offer by RVP requested an exclusive marketing contract, whereby only RVP could market the shovel. Simplot, however, rejected the exclusive marketing arrangement. Instead, Simplot sent RVP a letter dated March 16, 1987, outlining the bases upon which RVP could market the shovel. The contract stated, inter alia, that RVP agrees to represent Simplot on a non-exclusive basis, that the sale of the shovel shall be a price of $725,000 cash to Simplot, that RVP would receive a 10% commission if sold for this amount, and that the sale would be subject to final approval by Simplot. Simplot reserved the right to refuse to sell to any party, and the right to withdraw the shovel at any time.

RVP signed the contract, returning it with a letter from RVP which stated:

> As mentioned above, we normally only take machinery listings on an exclusive basis. However, we are prepared to market your shovel on a non-exclusive basis as outlined in your letter of March 16th so long as we are in agreement that RVP will be the single marketing representative for you until such time as one of the following occurs:
>
> 1.  Simplot elects to withdraw the shovel for sale.
> 2.  Simplot trades the shovel in to the factory.

3

> 3.  Simplot no longer wishes RVP to sell the shovel. RVP would be paid its commission on any sale later consummated if RVP had solicited the Buyer.

The parties agree that these two letters together formed the marketing agreement. Mr. Peterson, the owner of RVP testified by deposition that when he signed the contract he was aware that Simplot was negotiating with Harnischfeger regarding a possible trade-in of the shovel.

Based upon the marketing agreement, RVP prepared brochures advertising the shovel and mailed them to possible purchasers. Golden Sunlight received a brochure on April 3, 1987, and on April 30, 1987 it contacted RVP. On May 14, 1987, an agent of RVP took two representatives of Golden Sunlight to Afton, Wyoming to inspect the shovel.

On March 10, 1987 Harnischfeger inspected Simplot's used shovel, and discussed with Simplot its trade-in value and the purchase of a new shovel. In late April 1987 Harnischfeger learned through discussions with Golden Sunlight that a broker, RVP, was attempting to market the shovel. Harnischfeger inquired of Simplot whether it could still take the shovel on trade. Simplot assured the company that it could. Golden Sunlight also made inquires of Harnischfeger as to its ability to sell the shovel, since Golden Sunlight knew that RVP was also marketing it. Golden Sunlight received assurances from Harnischfeger that it would be able to resell the shovel should the trade-in occur.

Harnischfeger continued its negotiations with Simplot for the purchase of the new mining shovel. On May 19, 1987, Simplot received Harnischfeger's written proposal for that sale. On May 27, Harnischfeger sent a proposal to Simplot offering a $650,000 credit on the new shovel, in exchange for a trade-in of the used shovel.

4

By letter dated May 27, 1987, Harnischfeger confirmed to Golden Sunlight its right to sell the used shovel, and quoted a price of $675,000. Earlier, on April 30, RVP had offered to sell the shovel to Golden Sunlight for a price of $725,000. On May 29, Golden Sunlight expressed an interest in purchasing the shovel from Harnischfeger, but Golden Sunlight requested that an additional $50,000 worth of spare parts for the shovel be included in the deal. Harnischfeger then negotiated with Simplot regarding the spare parts, and Simplot agreed to include $50,000 worth of spare parts in the trade-in of the shovel to Harnischfeger.

At some point between May 27 and June 2, Simplot made a verbal agreement with Harnischfeger to trade in the shovel, and purchase the new one, and on June 5, 1987, Simplot gave Harnischfeger a purchase order number. According to this agreement, Simplot would trade in the used shovel for a credit of $650,000 against the purchase price of a new shovel. Additionally, Simplot agreed to trade in $50,000 of spare parts to Harnischfeger.

On June 1, 1987, Golden Sunlight verbally agreed to purchase the used shovel from Harnischfeger. June 8, 1987, Golden Sunlight issued a written purchase order for the shovel.

Also on June 8th, RVP telephoned Golden Sunlight and learned that it had decided to purchase the shovel from Harnischfeger. RVP then sent a letter to Simplot that same day by Federal Express, stating that he had found a purchaser for the shovel. Enclosed with the letter was a check for a down payment of $72,500. Mr. Peterson later testified that the purchaser was himself. On June 11, Simplot returned the check to RVP, stating that the shovel had been taken in on trade by Harnischfeger on a new shovel. On July 10, 1987, RVP filed suit against Simplot, Harnischfeger, and Golden

Sunlight. Following discovery, which included deposing all parties, the defendants moved for summary judgment. Oral argument was held on this motion on December 8, 1988. The court granted summary judgment in favor of all three defendants.

I

Did the District Court err in granting summary judgment in favor of J.R. Simplot Co.?

The standard of review, in determining whether summary judgment should have been granted has been stated as follows:

> The standard by which this Court reviews an appeal from a motion granting summary judgment is whether the record, when taken as a whole, shows no genuine issue of material fact. Kronen v. Richter (Mont. 1984), 683 P.2d 1315, 1317, 41 St.Rep. 1312. Where critical testimony is taken by deposition, this Court will closely examine the District Court's findings. When reviewing deposition testimony the reviewing court is in a like position to the District Court and is freely able to review such evidence. Kaiser v. Town of Whitehall (Mont. 1986), 718 P.2d 1341. 1342, 43 St.Rep. 176.
>
> A party opposing a motion for summary judgment may not rest upon the allegations or denials of his pleadings. The party's response must set forth specific facts showing there is a genuine issue for trial. National Gypsum Co. v. Johnson (1979), 182 Mont. 209, 595 P.2d 1188, 1189. Conclusory or speculative statements are insufficient to raise a genuine issue of material fact. Kronen, 683 P.2d at 1318.

Spadaro v. Midland Claims Service, Inc. (Mont. 1987), 740 P.2d 1105, 1108, 44 St.Rep. 1221, 1224. Regarding summary judgment, this Court has also stated:

6

> It is true that the party moving for summary judgment has the burden of establishing the absence of any genuine issue of material fact, and the party opposing the motion must supply evidence supporting the existence of a genuine issue of material fact. Pretty on Top v. City of Hardin (1979), 182 Mont. 311, 315, 597 P.2d 58, 60. The general purpose of Rule 56, M.R.Civ.P., is to eliminate unnecessary trial, delay and expense. The purpose of the hearing on the motion is not to resolve factual issues, but to determine whether there is any genuine issue of material fact in dispute. The opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy nor merely suspicions. Silloway v. Jorgenson (1965), 146 Mont. 307, 310, 406 P.2d 167, 169.

Westlake v. Osborne (1986), 713 P.2d 548, 550, 43 St.Rep. 200, 202-203.

RVP contends that Simplot breached its contract by authorizing Harnischfeger to sell the shovel to Golden Sunlight before the trade-in occurred. RVP alleges that the sale to Golden Sunlight was consummated before the trade-in and was really a direct sale from Simplot to Golden Sunlight. RVP contends that at a minimum these are genuine issues of material fact which are proper for jury determination, not summary judgment.

The contract between RVP and Simplot specifically allowed a trade-in to the factory, and RVP knew when it signed the contract that Simplot was negotiating with Harnischfeger regarding a possible trade-in of the used shovel. According to the express terms of the contract, the trade-in to Harnischfeger was allowed. RVP failed to present facts showing a contract breach as a result of the trade-in.

RVP urges that a letter, dated May 27, 1987, from Harnischfeger to Simplot, demonstrates that Simplot authorized a sale by Harnischfeger to Golden Sunlight of the used shovel prior to the trade-in. In regard to the used shovel,

7

the letter stated, "If we are able to sell the [used shovel] it will be traded in on a P & H Model 1200 . . . " This letter, written by Harnischfeger to Simplot, demonstrates nothing in regard to Simplot's actions. Deposition testimony by Simplot representatives demonstrates that Simplot was concerned only with the trade-in of the shovel and had no interest in or knowledge of Harnischfeger's sale negotiations with Golden Sunlight. While there was testimony by Simplot that in late May it became aware that Harnischfeger was negotiating a sale of the used shovel with a third party, there are simply no facts suggesting that Simplot was involved in any sale of the shovel.

The District Court concluded that the trade-in and sale to Golden Sunlight were contemporaneous and RVP has demonstrated no material facts to refute this. At some point between May 27 and June 2, Simplot and Harnischfeger orally agreed to the purchase of a new shovel and the trade-in of the used shovel. Also on June 1, Golden Sunlight gave Harnischfeger a verbal order to purchase the used shovel. On June 5, Simplot gave Harnischfeger a purchase order number for the transaction, and on June 8, Golden Sunlight gave Harnischfeger a written purchase order. We conclude that RVP has failed to show any genuine issues of material fact regarding an alleged breach of contract by Simplot. RVP does not support his allegations with anything more than speculation and suspicion. This does not defeat a summary judgment motion.

RVP contends that Simplot breached an implied covenant of good faith and fair dealing in its contractual relationship with RVP. The covenant of good faith and fair dealing is measured by the justifiable expectations of the parties. As we stated in Nicholson v. United Pacific Ins. Co. (1985), 219 Mont. 32, 710 P.2d 1342:

8

> The nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties. Where one party acts arbitrarily, capriciously or unreasonably, that conduct exceeds the justifiable expectations of the second party.

Nicholson, 710 P.2d at 1348.

In the present case RVP failed to present facts showing that Simplot's conduct violated RVP's justifiable expectations, or that it was arbitrary, capricious or unreasonable. The trade-in was allowed by the contract, and RVP was aware of the negotiations between Simplot and Harnischfeger prior to the trade-in. Also, RVP cannot reasonably contend that it did not expect Harnischfeger to resell the shovel. Harnischfeger is a dealer in heavy machinery which engages in the sale of used equipment. No material facts support RVP's contention that his expectations were violated. We affirm the District Court in its holding that no genuine issue of material fact existed regarding an alleged breach of this covenant.

RVP contends that Simplot was unjustly enriched because Simplot did not have to pay the 10% brokerage commission. It contends that RVP solicited the buyer, Golden Sunlight, and was therefore due a commission. Unjust enrichment is an equitable doctrine wherein the plaintiff must show some element of misconduct or fault on the part of defendant, or that the defendant somehow took advantage of the plaintiff. Brown v. Thornton (1967), 150 Mont. 150, 156, 432 P.2d 386, 390.

In the present case, RVP's contention that it was due a commission and that Simplot was unjustly enriched is without merit. No commission was due RVP since it did not consummate a sale to Golden Sunlight. Neither did RVP "solicit" Golden

9

Sunlight as a buyer, thereby earning a commission. The facts reveal that Harnischfeger had begun discussions with Golden Sunlight fully three months before Golden Sunlight was contacted by RVP. Additionally, no evidence suggests that Simplot obtained any advantage by trading the shovel in to Harnischfeger. In fact, RVP admitted that Simplot probably would have been better off financially to have sold the shovel through RVP. We conclude that RVP failed to demonstrate facts showing that Simplot was unjustly enriched.

We affirm the District Court in its grant of summary judgment in favor of defendant Simplot.

II

Did the District Court err in granting summary judgment in favor of defendant Harnischfeger?

RVP contends that Harnischfeger tortiously interfered with RVP's contract with Simplot and that Harnischfeger was unjustly enriched. The elements of tortious interference with contract were stated in Bolz v. Myers (1982), 200 Mont. 286, 295, 651 P.2d 606, 611, as follows:

> In order to establish a prima facie case of interference with contractual or business relations, it must be shown that the acts (1) were intentional and willful, (2) were calculated to cause damage to the plaintiff in his or her business, (3) were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor, and (4) that actual damages and loss resulted. Bermil Corp. v. Sawyer (Fla.App. 3rd Cir. 1977), 353 So.2d 579.

Bolz, 651 P.2d at 611.

Additionally, other authorities have noted that the tort of tortious interference with contract requires that defendant act for an improper purpose. W. Keeton, The Law of Torts, § 129, p. 982 (5th Ed. 1984).

10

RVP contends that Harnischfeger tortiously interfered with its contract with Simplot in that it intentionally and willfully acted to sell the shovel, knowing this would deprive RVP of its contractual rights, and with a purpose to provide unjustifiable gain to itself. The District Court found no genuine issues of material fact to support this allegation, and we agree.

When Harnischfeger learned of RVP's efforts to market the shovel, it immediately inquired of Simplot whether the shovel could still be taken on trade. Receiving assurances from Simplot that the brokerage agreement with RVP allowed the trade-in, Harnischfeger then continued to negotiate with Golden Sunlight. The subsequent sale of the shovel was no more than a reasonable and legitimate business transaction. We conclude that RVP has failed to raise any genuine issues of fact which would suggest that Harnischfeger acted improperly, or that its acts were intentionally calculated to cause damage to RVP. We conclude that no genuine issues of material fact exist as to whether Harnischfeger tortiously interfered with the contract. RVP's contention that Harnischfeger was unjustly enriched similarly fails, in that RVP points to no facts indicating misconduct by Harnischfeger. We affirm the District Court in its grant of summary judgment in favor of defendant Harnischfeger.

### III

Did the District Court err in granting summary judgment in favor of defendant Golden Sunlight?

RVP also alleges tortious interference with contract and unjust enrichment as to the third defendant, Golden Sunlight. However, we conclude that no genuine issues of material fact support these allegations.

Golden Sunlight knew that both Harnischfeger and RVP were marketing the shovel. Golden Sunlight inquired of

11

Harnischfeger whether it could rightfully sell the shovel. After Harnischfeger received assurance from Simplot that the marketing agreement with RVP allowed the trade-in to Harnischfeger, Harnischfeger responded to Golden Sunlight that it could sell the shovel in the event of a trade-in.

RVP contends that Golden Sunlight "had an affirmative obligation to investigate that this was the case." RVP further argues that since Golden Sunlight did not do so, its actions amounted to tortious interference with contract. As noted previously, this tort requires an intentional act for an improper purpose. Bolz, 651 P.2d at 611; Keeton, § 129 at 982. RVP's contention thus fails, as it merely alleges negligence on the part of Golden Sunlight. Finally, we conclude that RVP has failed to demonstrate any misconduct on the part of Golden Sunlight; thus the allegation of unjust enrichment must similarly fail. Brown, 432 P.2d at 390.

We conclude that there are no genuine issues of material fact regarding whether Golden Sunlight tortiously interfered with the contract in the present case, or whether Golden Sunlight was unjustly enriched. We therefore affirm the District Court's grant of summary judgment in favor of Golden Sunlight.

Affirmed.

_____
                                          Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

12