No.   92-023

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

KELLY DANIELS, individually
and d/b/a A. ABLE TRADING
COMPANY,

Plaintiff and Respondent,

-vs-

JOHN DEAN, STEVE BOLINGER,
HAROLD LAKE and MARY LAKE,

Defendants and Appellants.

FILED

JUN 1 6 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Jack L. Green, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        John C. Schulte, Attorney at Law, Missoula, Montana

        For Respondent:

        T. K. Botsford, Attorney at Law, Missoula, Montana


                        Submitted on Briefs:   April 30, 1992

                                Decided:   June 16, 1992

Filed:

_____
                Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a judgment of the Fourth Judicial District, Missoula County. The District Court awarded Kelly Daniels (Daniels), $45,765.65 in compensatory and punitive damages and attorney fees for defendants' breach of Daniels' commercial lease; for malicious and intentional defamation of Daniels; and for tortious and intentional interference with Daniels' commercial lease. Judgment was entered jointly and severally against all defendants. Defendant John Dean (Dean) filed an appeal which was dismissed upon his own motion. Defendants Harold Lake and Mary Lake (Lakes) filed this separate appeal. We affirm in part and reverse in part.

The Lakes raise four issues for our review which shall be addressed as follows:

I. Did the District Court err by allowing the initial show cause hearing to be treated as a full and final trial on the issues?

II. Did the District Court err by finding Harold Lake and Mary Lake jointly and severally liable?

III. Did the District Court err by imposing punitive damages for defamation of Daniels and for the tortious interference with Daniels' rights under the commercial lease?

IV. Did the District Court err by awarding Daniels free rent through September, 1993?

Kelly Daniels operates a second hand store in premises he leased from Ben Bernatz. A written lease for the premises extended

2

through September, 1993. In January, 1991, Steve Bolinger, John Dean and Harold Lake met with Bernatz and Daniels to discuss the purchase of the property and Daniels' lease. Bolinger, Lake and Dean expressed their desire that Daniels leave his leased premises so that the building could be used to open a service area for a used car business operated by Dean and Bolinger. Negotiations to have Daniels vacate his lease failed.

John Dean, Steve Bolinger, Harold Lake, and Mary Lake, purchased the property from Bernatz, as tenants in common, on January 11, 1991. The contract for deed specifically provides that purchase of the property is subject to Daniels' existing commercial lease. A copy of the lease and an addendum to the lease were attached to the contract for deed. Harold Lake read the contract for deed prior to closing and agreed to all that it contained. Dean was authorized to manage the property and the lease with Daniels and presented himself to Daniels as representing the owners of the property.

Contrary to the existing lease agreement, on January 11, 1991, Dean delivered a thirty day eviction notice to Daniels ordering him off the premises without cause. Daniels refused to vacate. Thereafter, despite available parking elsewhere on the premises, Dean's son and an employee of Dean began to park vehicles immediately in front of Daniels' store obstructing entrance to the store and utilizing parking otherwise available to Daniels' customers. There is evidence that Dean's son and an employee repeatedly threw gravel from their car tires against the storefront

3

window where Daniels customarily displayed antique furniture outside.

Daniels' February rent check was returned to Daniels with a note demanding that he vacate the property by February 11, 1991. Dean advised Daniels that he would never accept any rent payment from him. On or about February 12, 1991, Harold Lake was on the property making measurements and pointing to the spot where a garage door was to be cut into the wall of Daniels' store. Harold Lake had knowledge of both the intention to cut the hole in the wall and the refusal of Daniels' rent. Lake testified that he would not have entered the deal had he known Daniels would remain. Further, he testified he was unwilling to tolerate Daniels having the right to remain on the property.

About February 15, 1991, there was a confrontation in the parking lot. Daniels' testified that Dean and others swore at him and threatened to kill him if he refused to vacate. There is evidence that Dean's son, employees of Dean and others continually gathered near the front of Daniels' store to threaten, frighten and harass Daniels and his patrons.

Following the parking lot confrontation, Dean removed the thermostat from Daniels' store and Daniels' heat was cut off. When the owners refused to provide heat, Daniels attempted to heat his store with electric space heaters. Dean filed a complaint with the Missoula Fire Department alleging that Daniels' use of the heaters was hazardous and that he was attempting to burn down the building. Following investigation, no charges were brought. Dean also filed

4

a complaint with the Missoula City building inspector.

After another parking lot confrontation Dean filed a criminal complaint against Daniels alleging that he was armed and threatening Dean. A Missoula County sheriff's deputy responded and frisked Daniels in his store in front of his customers. After further investigation the officer apologized to Daniels and left taking no further action. Following another confrontation with Dean, Daniels was notified by the United States Post Office that he was accused of stealing Dean's mail.

On February 20, 1991, Dean filed an action in justice court seeking to evict Daniels. Despite Dean's refusal to accept rent, default notices were sent to Daniels for failure to pay March and April rent. On March 12, 1991, Daniels filed this action in District Court. Dean dismissed the justice court action so that all matters could be adjudicated in the District Court suit. On May 9 and 14, 1991, an evidentiary hearing was held on Daniels' application for an order to show cause. At the conclusion of the hearing, upon the court's inquiry, counsel stipulated that the hearing be considered the trial on the merits and be submitted to the court for final adjudication.

I.

The Lakes contend that it was error for the District Court to suggest the submission of the matter for final adjudication at such an early stage of the lawsuit. They further suggest that the District Court improperly urged counsel to so stipulate. It is the Lakes' contention that they should not be bound by the stipulation

5

of their attorney because they were not informed and as a result have lost 'substantial and fundamental rights' such as a right to discovery and to trial by jury.

The record provides the following discourse relevant to this issue:

> The Court: Could I see counsel at the bench, please?
> (Whereupon, a discussion took place at the bench)
>
> The Court: Very well. For the record, will counsel stipulate that this matter may be considered a trial on the merits? I think we have covered everything that it would be possible to bring out in a trial, and I can't see anything that we have missed that would add to this case one way or the other. But it's up to you gentlemen if we -- if you want to have a further hearing on it, we may do so. And what is your desire?
>
> Mr. Botsford (counsel for Daniels): Your Honor, I can so stipulate for the Plaintiff, and we've represented what our damages are, if that's acceptable to the Court.
>
> The Court: Very well. And Mr. Modine?
>
> Mr. Modine (counsel for Dean and Lake): I would stipulate to the determination of this as an evidence for the trial as well.

Section 37-61-401, MCA, provides in part:

> **Authority of Attorney.** (1) An attorney and counselor has authority to:
> (a) bind his client in any steps of an action or proceeding by his agreement filed with the clerk or entered upon the minutes of the court and not otherwise;
> . . .

We have held that a party is bound to stipulations made by counsel entered in open court. Counts v. Chapman (1979), 180 Mont. 102, 589 P.2d 151. We further note the stipulation here is entered upon the minutes of the court. In Counts, we rejected appellant's contention that she should not be bound to a stipulated waiver of rights because she did not have the opportunity to discuss it with

6

her attorney beforehand.

We conclude that when the stipulation was entered by Lakes' attorney, the Lakes voluntarily waived any right to discovery, jury trial or any other rights they claim to have lost. We further conclude there is no proof the court improperly "urged" the parties to stipulate to submission of the matter for final adjudication. The District Court is affirmed.

## II.

The District Court in conclusion of law number XIV held:

Defendants are jointly and severally liable for the respective actions of their fellow Defendants (Defendants, John Dean, Steve Bolinger, and Harold Lake) and are jointly and severally liable as principals of an agency relationship created by the Defendants, or as subsequently ratified with respect to the actions and conduct set forth in Conclusions No. XII above.

Conclusion No. XII delineates the previously described acts committed by the defendants against Daniels. The Lakes argue there is no substantial evidence that either of them had knowledge of, planned or personally took any action towards Daniels.

Section 28-10-602, MCA, provides:

**Principal's responsibility for agent's negligence, omissions, and wrongs.** (1) Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal.

(2) A principal is responsible for no other wrongs committed by his agent than those mentioned in subsection (1) unless he has authorized or ratified them, even though they are committed while the agent is engaged in his service.

7

The Lakes do not dispute the court's conclusion that there existed a principal and agent relationship between the named defendants. Instead, they contend that the evidence fails to prove that they were personally responsible, authorized, or ratified any of the wrongful conduct alleged in Daniels' complaint.

Whether or not the Lakes were personally responsible for any of the wrongful acts towards Daniels, or whether they authorized or ratified Dean's actions is a question of fact. Findings of fact will not be set aside unless clearly erroneous, and due regard will be given the opportunity of the trial court to judge of the credibility of the witnesses. Rule 52(a), M.R.Civ.P. A finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if after review of the record the Court is left with a firm conviction that a mistake has been committed. Interstate Production Credit v. DeSaye (1991), 820 P.2d 1285, 48 St.Rep. 986.

After careful review of the record, we conclude the finding that Mary Lake is jointly and severally liable is not supported by substantial evidence. The only evidence in regard to Mary Lake is that she signed papers that were put before her and Daniels' testimony that she never communicated, harassed or interfered with Daniels in any manner. We conclude the District Court erred in holding Mary Lake liable and reverse on this point.

In regards to Harold Lake, there is a lack of evidence that he was personally responsible or directly authorized Dean's actions; however, there is substantial evidence that he did ratify the

8

wrongful acts. Ratification of an agent's actions requires the occurrence of three elements: (1) acceptance by the principal of the benefits of the agent's acts, (2) with full knowledge of the facts and (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangement. Moore v. Adolph (1990), 242 Mont. 221, 223, 789 P.2d 1239, 1241; Safeco Ins. Co. v. Lovely Agency (1982), 200 Mont. 447, 453, 652 P.2d 1160, 1163.

Harold Lake testified that it was important to him that Daniels vacate his lease, that he was unwilling to tolerate Daniels remaining on the property and that he would not have entered the deal had he thought Daniels would remain. Harold Lake clearly accepts the benefits of Dean's attempts to induce Daniels to vacate the lease satisfying the first element of ratification.

There is substantial evidence that Harold Lake was on notice that Daniels' lease did not expire until September, 1993 and that Daniels did not intend to leave early. Furthermore, there is substantial evidence that Harold lake expected that Daniels could and would be induced to vacate his leasehold. We conclude Harold Lake had full knowledge of the facts such that the second element of ratification is met.

The third element requires that Harold Lake was aware of the circumstances surrounding Daniels' lease. The record demonstrates that he was aware of the fact that Dean would and did refuse to accept rent from Daniels. It further shows that he was aware that the thirty day eviction notice was sent despite the lease

9

agreement. Furthermore Harold Lake was aware of and testified to the importance that was attached to getting Daniels to vacate.

We conclude that the three elements of ratification are present in the instant case. The District Court's conclusion that Harold Lake is jointly and severally liable is affirmed.

### III.

The District Court concluded that Daniels was defamed by the false claims made to the Missoula County Sheriff's Office, the Missoula Fire Department, the Missoula City building inspector, and the United States Post Office and that such defamation was slanderous per se. The court further concluded that the defamation was done with malice and intent to harm and awarded Daniels $10,000 in punitive damages. An additional $25,000 in punitive damages was awarded for "malicious and intentional actions in tortiously interfering with Plaintiff's valid lease and addendum".

The Lakes argue that there is a distinction between compensatory and punitive damages such that one may be jointly and severally liable for the acts of his agent leading to compensatory damages but that in order to extend liability for punitive damages there must be clear and convincing evidence that each separate defendant acted with actual malice. Authority is cited from other jurisdictions for the proposition that principals should not be vicariously liable for punitive damages due to the intentional misconduct of an agent unless there is proof of fault on part of the principal.

As discussed above, we conclude that Harold Lake ratified

Dean's wrongful attempts to induce Daniels to vacate and under §
28-10-602, MCA, is liable for damages. We find no authority to
support Lakes' contention that in the absence of a showing of
actual malice on the part of the principal, § 28-10-602, MCA,
applies exclusively to compensatory damages. Section 28-10-602,
MCA, by its own language holds a principal liable for the wrongs of
an agent which have been ratified. The statute does not limit
liability to wrongs other than intentional and malicious acts
resulting in an award of punitive damages.

Next, the Lakes argue that the award of punitive damages is
erroneous under the law as defined by this Court in Story v. City
of Bozeman (1990), 242 Mont. 436, 791 P.2d 767. In Story, we held
generally that in the great majority of contracts, breach of the
implied covenant of good faith and fair dealing is a breach of
contract where only contract damages are due. Tort type damages may
only be available in contracts where a 'special relationship'
exists or for traditional contract related torts such as fraud,
fraudulent inducement, and tortious interference with a contract.
We agree with the Lakes that under the Story criterion, a special
relationship does not exist that would entitle Daniels to punitive
damages for breach of the implied covenant of good faith and fair
dealing.

However, the District Court did not award punitive damages
for breach of the implied covenant. Punitive damages were awarded
for the separate and independent torts of defamation and tortious
interference with Daniels' lease. The Lakes argue and Daniels

11

concurs that generally interference can give rise to tort liability only when one interferes with a contract to which one is a stranger. Phillips v. Montana Education Association (1980), 187 Mont. 419, 610 P.2d 154.

In Bolz v. Meyers (1982), 200 Mont. 286, 651 P.2d 606, we addressed a similar circumstance wherein we concluded that a person could be liable for breach of a contract to which they were a party and also be liable for the tort of intentional interference. We noted a distinction between the defendants' actions which not only breached the contract but also separately and distinctly by their outrageous nature tortiously interfered with the business relations between the plaintiff and his customers. Bolz v. Meyers (1982), 200 Mont. 286, 651 P.2d 606; Houser v. City of Redmond (1978), 91 Wash. 2d 36, 586 P.2d 482, 485. We have also affirmed an award of punitive damages against a defendant for breach of a duty to assign a lease, separate and distinct from the subject matter and issue of breach of the lease itself. Moore v. Hardy (1988), 230 Mont. 158, 748 P.2d 477.

A prima facie case of interference with contractual or business relations requires: (1) intentional and willful acts, (2) calculated to cause damage to the plaintiff in his or her business, (3) done with the unlawful purpose of causing damage or loss, without justifiable cause on the part of the actor, and (4) actual damages and loss must result. Bolz, 200 Mont. at 295, citing Bermil Corp. v. Sawyer (Fla.App.3rd Cir. 1977), 353 So.2d 579. The proven facts of this case establish that the defendants not only

12

breached the implied covenant of good faith and fair dealing, thereby breaching the contract and entitling Daniels to contract damages; but also went further and tortiously interfered with Daniels' business relationships with his customers entitling him to punitive damages.

The District Court's conclusion that intentional and malicious interference had occurred was correct and it is immaterial what reasons the court gave for the conclusion. Bolz, 200 Mont. at 295, 296, citing Fergus County v. Osweiler (1938), 107 Mont. 466, 86 P.2d 410; 120 A.L.R. 1457; Johnstone v. Sanborn (1960), 138 Mont. 467, 358 P.2d 399. The District Court award of punitive damages is affirmed.

### IV.

The District Court awarded Daniels free rent for the remainder of his lease term. The conclusion was based on the theory that the defendants were estopped from claiming any rent from Daniels because of their previous refusal of rent. The measure for damages for breach of a contract is the compensatory amount for all of the detriment proximately caused by or likely to result therefrom in the ordinary course of things. Weinberg v. Farmer State Bank of Worden (1988), 231 Mont. 10, 752 P.2d 719. There is no legal basis for the court's award of free rent as an element of compensatory damages. There is no change in position of the parties regarding future rents entitling Daniels to such relief. The District Court is reversed on this point.

Affirmed, reversed and remanded to the District Court for

13

entry of judgment in conformance with this opinion.

_____  
Justice

We Concur:

_____  
Chief Justice

_____

_____

_____

_____  
Justices

June 16, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

John C. Schulte, Esq.
Attorney at Law
111 N. Higgins Ave., Ste. 502
Missoula, MT  59802

T. K. Botsford
Attorney at Law
P.O. Box 8213
Missoula, MT  59807

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy