497 So.2d 269 (1986)
Elbert V. EDWARDS, Anita L. Edwards, Lionel Cavallini, and Isabel Cavallini, Appellants,
v.
BRANDON REALTY, INC., a Florida Corporation, and Horizon Realty of Plant City, Inc., a Florida Corporation, Appellees.
Nos. 85-1822, 85-1831.
District Court of Appeal of Florida, Second District.
September 17, 1986.
*270 Chris W. Altenbernd and Hala Mary Ayoub of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellants Elbert V. Edwards and Anita L. Edwards.
E.C. Watkins, Jr., Tampa, for appellants Lionel Cavallini and Isabel Cavallini.
Walter H. Berg, Jr., of Trinkle, Redman, Alley & Moody, P.A., Brandon, for appellees.
GRIMES, Acting Chief Judge.
This is an appeal from a final summary judgment for real estate commissions against both the buyers and sellers of certain real property.
Prompted by their pending divorce, Mr. and Mrs. Edwards decided in early 1983 to try to sell their twenty-nine acres of property which contained an orange grove. Mr. Edwards told three realtors, including Marie Frye of Horizon Realty of Plant City, Inc., that he would sign a contract for the sale of the property which would net to him $7,500 per acre. Some time in the summer of 1983, Ms. Frye telephoned Mrs. Edwards to inform her that she wanted to show the grove to a "Dr. Cavannelli." Accompanied by Diane June of Brandon Realty, a cooperating broker, Ms. Frye took Dr. and Mrs. Cavallini to see the property, but the Edwardses were not present at this time. The Cavallinis told the brokers that they were not interested in purchasing the grove because it was overgrown with shrubbery due to poor maintenance. Thereafter, in September of 1983 the Cavallinis entered into a contract to purchase a different orange grove. The financing arrangements for the purchase of the second orange grove were rejected and the Cavallinis began to search for another grove.
In March of 1984, the Cavallinis were reintroduced to the Edwardses' grove by a mutual friend, Carol Lanier, who worked with Dr. Cavallini and who was Mr. Edwards' fiance. Ms. Lanier arranged for the Cavallinis to view the grove. At first the Cavallinis were not aware that it was the same grove the brokers had shown them because it had been cleared since the first viewing. When Dr. Cavallini recognized the grove, he informed Mr. Edwards that Marie Frye and Diane June had shown him the property in the summer of 1983. After negotiations with the Edwardses, the Cavallinis entered into a contract in May of 1984 for the sale of the orange grove. The actual sales price was $7,137.93 per acre.
When the brokers learned of the sale, they sued the Edwardses for breach of an oral listing alleging that they were the procuring cause of the sale. They also sued the Cavallinis alleging intentional interference with their contractual relationship with the sellers. All parties moved for summary judgment. Following a hearing, the court entered final summary judgment for the brokers against both the Cavallinis and the Edwardses, determining that a reasonable commission was ten per cent of the sales price.
In order to recover for intentional interference with a contractual relationship, the broker must show that the purchaser intentionally and without justification interfered with the relationship. Mead Corp. v. Mason, 191 So.2d 592 (Fla. 3d DCA 1966), cert. denied, 200 So.2d 813 (Fla. 1967). The undisputed facts in this case indicate that the Cavallinis had no *271 intent to interfere with any contractual relationship between the Edwardses and the brokers. Once Dr. Cavallini recognized the grove as the one they rejected in the fall of 1984, he informed Mr. Edwards that he had seen the property with brokers. It was not until after the filing of the lawsuit that Mr. Edwards told Dr. Cavallini that he had spoken with several brokers about selling the property. There is nothing whatsoever in the record to support the conclusion that the Cavallinis intentionally interfered with the contractual relationship between the Edwardses and the brokers.
We then turn to the claims against the sellers. A broker who is the procuring cause of a sale of real estate is entitled to a commission. Warren Hunnicutt, Jr., Inc. v. Gleason, 462 So.2d 878 (Fla. 2d DCA 1985); Howard v. Boner, 385 So.2d 699 (Fla. 1st DCA 1980). In order to be considered the procuring cause of sale, the broker must bring the parties together and effect the sale through continuous negotiations originated by him. Leon Realty, Inc. v. Hough, 310 So.2d 767 (Fla. 1st DCA), cert. denied, 324 So.2d 86 (Fla. 1975). However, there is an exception to the procuring cause requirement to award commissions due the broker where the broker initially introduces the seller and the buyer, and then is intentionally excluded from subsequent negotiations culminating in a sale. First Realty Corp. v. Standard Steel Treating Co., 268 So.2d 410 (Fla. 4th DCA 1972). See also Bermil Corp. v. Sawyer, 353 So.2d 579 (Fla. 3d DCA 1977); Alcott v. Wagner & Becker, Inc., 328 So.2d 549 (Fla. 4th DCA 1976).
The case on which the brokers most heavily rely to support their contention that they are within the procuring cause exception is Sheldon Greene & Associates, Inc. v. Rosinda Investments, N.V., 475 So.2d 925 (Fla. 3d DCA 1985). In Sheldon Greene, the court stated that:
[A] broker, to be considered the "procuring cause" of a sale, must have brought the purchaser and seller together and effected a sale through continuous negotiations inaugurated by him unless the seller and buyer intentionally exclude the broker and thereby vitiate the need for continuous negotiations. Plainly,
[w]hen the broker has brought the prospective parties together, they cannot complain that the broker did not participate in negotiations when they have purposely excluded the broker from these negotiations by dealing with one another directly and in secret. [Citation omitted.]
475 So.2d at 927.
In Sheldon Greene the buyers wanted to purchase a hotel for investment purposes. On two occasions the broker took the buyers to inspect an apartment building owned by the seller. The seller was not present on these occasions but his resident manager knew of the purchasers' visits. The buyers told the broker they were not interested in purchasing the apartment building. The buyer then bought another hotel property. The broker on learning this ceased communicating with the buyers. Within the year that the buyers initially viewed the apartment building in question, the buyers communicated directly with the seller's agent to negotiate purchase of the apartment building. The broker was excluded from these negotiations.
In concluding that the broker was entitled to the commission on the sale, the court held:
Thus, the continuous negotiation requirement is vitiated where the seller and buyer exclude the broker, and the broker need only establish that the seller and buyer dealt him out. While we acknowledge that such descriptive terms as "secret," "clandestine," and "conspiratorial" are often found in the broker commission cases, the use of such terms hardly establishes an additional element of a broker's cause of action for a commission, that is, that the seller and buyer acted with bad motives. In our view, these terms, in this context, mean nothing more than that the buyer has negotiated directly with the seller without the participation of the broker who first called the property to the buyer's attention; *272 this negotiation is called "secret," "clandestine," and "conspiratorial" because only the buyer and seller are in on it.
We therefore conclude that liability for the brokers' commission may be predicated on the simple fact that the seller and buyer, having been brought together by the brokers, strike their own deal.
475 So.2d at 928.
We find the present case factually distinguishable from Sheldon Greene. In the present case the buyers and sellers were never introduced by the brokers. Although Mrs. Edwards was advised that the brokers wished to show the property to a doctor of whose name she was uncertain, neither she nor her husband was ever told that any showing had actually taken place. Once the Cavallinis stated that they did not wish to buy the property, there was no effort on the part of the brokers to rekindle their interest nor was there any evidence of negotiations initiated by the brokers. The Cavallinis, in fact, attempted to purchase another grove at that time.
Significantly, there is no indication that the brokers took any action to sell the Edwardses' grove except for the isolated showing to the Cavallinis. More importantly, the events leading to the purchase of the grove indicate that there was no intent by the parties to exclude the brokers from the negotiations. In contrast to Sheldon Greene, here it was undisputed that the buyers and sellers did not secretly seek each other out to negotiate the sale. They met by happenstance. If anyone was the procuring cause of the sale, it was Carol Lanier. See Judson v. Mobley, 62 So.2d 730 (Fla. 1953).
The context in which the Sheldon Greene case was decided suggests that its holding is applicable to those cases where the broker after substantial effort was "dealt out" of the negotiations by the buyers and sellers who sought each other out in order to avoid paying a commission. These were not the circumstances of the instant case. As such, Sheldon Greene is inapplicable.
We reverse the final summary judgment in favor of the brokers and direct the trial court to enter final summary judgment in favor of the buyers and sellers.
RYDER and HALL, JJ., concur.