SHAHOOD, Judge.
This is an appeal from a final judgment entered in favor of appellees, Cornerstone Realty, Inc. (Cornerstone), Royal Palm West, Inc. (Royal Palm West), and Daniel Catalfu-mo (Catalfumo), and against appellants, South Pacific Enterprises, Limited Partnership (South Pacific), and Jess Santamaría (Santamaría). We also consider the cross- *569 appeals of Royal Palm West and Catalfumo and of Cornerstone.
In December 1990, Cornerstone, a real estate broker, was contacted by Good Samaritan Hospital to help locate a site in western Palm Beach County, Florida, for the development of a western satellite medical facility. In early January 1991, Frederick Schmidt, president of Cornerstone, and Cary Friedlan-der, a representative of the hospital, met with Santamaría to visit prospective sites for the proposed facility. During this trip, Friedlander saw and expressed interest in an undeveloped parcel of land, which was owned by South Pacific, a limited partnership in which Santamaría was the general partner. Shortly thereafter, Santamaría was asked to submit a development proposal for the subject property on behalf of South Pacific.
As negotiations concerning the development of the property at the hospital’s satellite facility began, Cornerstone and South Pacific entered into a client registration letter whereby South Pacific agreed to pay Cornerstone a three percent (3%) commission on any sale or lease of the subject property to the listed prospects, which included “Good Samaritan Hospital and/or Subsidiary Companies,” certain named physicians, and Mr. Friedlander. In February 1991, Santamaría submitted a development proposal to the hospital, through Cornerstone.
During this time period, Catalfumo, a real estate developer, learned of the hospital’s interest in the vacant property. Through a representative, Catalfumo then contacted Santamaría to express his interest in purchasing the parcel for purposes of developing the parcel as a medical facility to be used by the hospital. As negotiations for the purchase ensued, Catalfumo submitted a proposal for development of the site as a medical facility to the hospital. Despite the client registration letter, Cornerstone was excluded from any negotiations regarding the development of the subject property. During the pendency of these negotiations, the hospital rejected Santamaria’s proposal, preferring Catalfumo’s plan.
Thereafter, Good Samaritan Hospital entered into a development agreement with Catalfumo. Further, the hospital expressed its intent to establish a general partnership in which one of Catalfumo’s corporations would hold a 35% equity ownership and the remaining 65% would be divided between the physician tenants and Good Samaritan Health Corp. Subsequent thereto, Royal Palm West, Catalfumo, G.S. West, Inc., the hospital’s subsidiary, and certain individuals entered into a limited partnership agreement (Royal Palm West, Limited Partnership) for the purpose of “acquiring, operating, developing and leasing the [subject] property.” At about the same time, South Pacific contracted with Royal Palm West, a corporation wholly owned by Catalfumo, for the sale of the subject parcel of undeveloped property. The contract between South Pacific and Royal Palm West provided that both parties certified that they had not employed or otherwise dealt with any real estate broker in connection with the sale and that:
Each party agrees to indemnify and save harmless the other against any and all liability, loss, damages, costs or expenses which it may incur, suffer or be required to pay by reason of any claims for brokerage commission in connection with this transaction.
No commission was ever paid to Cornerstone.
Following the sale of the subject property, Cornerstone filed suit against South Pacific and Santamaría, claiming entitlement to a brokerage commission on the sale, and against Catalfumo and Royal West for tortious interference with its business relationship with both Good Samaritan and with South Pacific and Santamaría. Royal Palm West crossclaimed against South Pacific and Santamaría for indemnity under the contract for sale and South Pacific likewise crossclaimed against Royal Palm West and Catalfumo seeking indemnity under the same provision.
Following non-jury trial, the trial court entered final judgment in favor of Cornerstone, finding that Cornerstone was the procuring cause of the sale of the undeveloped parcel, and was entitled to commission under the client registration letter. The court *570 awarded Cornerstone damages of $22,000.00. The trial court, however, denied both cross-claims for indemnity.
On appeal, South Pacific maintains that the trial court erred in finding Cornerstone to be entitled to a commission on the sale of the subject property to Royal Palm West. We disagree. While we agree that the client registration letter, strictly construed against its drafter, Cornerstone, may not support Cornerstone’s claim of entitlement to a commission under the contract, see Planck v. Traders Diversified, Inc., 387 So.2d 440 (Fla. 4th DCA 1980), review denied, 394 So.2d 1153 (Fla.1981), it is nevertheless a well-settled principle that a real estate broker may be entitled to a commission on a sale of property, if it is determined to be the “procuring cause” of the sale. Estes v. Moylan, 94 So.2d 362 (Fla.1957); Shuler v. Allen, 76 So.2d 879 (Fla.1955); Taylor v. Dorsey, 155 Fla. 305,19 So.2d 876 (Fla.1944); First Realty Corp. of Boca Raton v. Standard Steel Treating Co., 268 So.2d 410 (Fla. 4th DCA 1972). See also National Airlines, Inc. v. Oscar E. Dooly Assocs., Inc., 160 So.2d 53, 54 (Fla. 3d DCA 1964) (the absence of direct employment does not always bar a broker from recovery where he had been found to be the procuring cause of a sale). As explained in Taylor, the seminal case on the subject, a broker will be entitled to a commission as the procuring cause “[i]f the broker has brought the parties together and a sale is effected as a result of the continuous negotiations inaugurated by him.” 155 Fla. at 308, 19 So.2d at 878.
In the case at bar, Santamaría and South Pacific maintain that Cornerstone could not be considered the procuring cause of the sale because it did not introduce South Pacific to its purchasers, Catalfumo and Royal Palm West, nor did it participate in the negotiations preceding the sale of the property. We reject each of these arguments. Courts have recognized that it is not essential for the broker to have been the one to physically introduce the seller and purchaser. As the fifth district explained in Ehringer v. Brookfield & Associates, Inc., 415 So.2d 774, 775-76 (Fla. 5th DCA 1982):
A broker who is the “procuring cause” of a sale of real property is one who initiates negotiations by doing any affirmative act to bring buyer and seller together such as placing signs on the property, promoting calls from prospective buyers, or showing the property to prospective purchasers.
In this case, although Cornerstone may not have physically introduced South Pacific and Royal Palm West, the record is clear that Good Samaritan Hospital’s interest in the property, the genesis for all subsequent dealings including the ultimate sale of the property, resulted from a trip initiated by Cornerstone. Accordingly, we find that, given Cornerstone’s pivotal role in generating interest in the subject property, it is inapposite to suggest that Cornerstone be denied a commission merely because it did not introduce South Pacific and Royal Palm West.
Moreover, the fact that Cornerstone had not participated in the sales negotiations between South Pacific and Royal Palm West is not fatal to its claim for commission as the procuring cause of the sale. The parties cannot resist the broker’s claim for commission by arguing that it did not participate in the sales negotiations where the parties themselves had specifically and purposefully excluded the broker from negotiations. Lee Giusti Realty, Inc. v. L.D. Corp., 603 So.2d 39, 40 (Fla. 4th DCA 1992); Sheldon Greene & Assocs., Inc. v. Rosinda Invs., N.V., 475 So.2d 925 (Fla. 3d DCA 1985), review dismissed, 502 So.2d 421 (Fla.1987); American United, Inc. v. Kroll Realty, Inc., 443 So.2d 217, 219 (Fla. 4th DCA 1983); Alcott v. Wagner & Becker, Inc., 328 So.2d 549 (Fla. 4th DCA 1976); First Realty Corp. Of Boca Raton, 268 So.2d at 413.
In the instant case, we find the record replete with evidence indicating the significant role which Cornerstone played in this sales transaction and that it was precluded from participating in the negotiations by South Pacific and Royal Palm West. Thus, we affirm the trial court’s finding that Cornerstone was the procuring cause of the sale and was entitled to recover a commission from South Pacific.
*571 However, on Cornerstone’s cross-appeal, we reverse the final judgment with respect to the amount of damages awarded. We can find no basis in the record for the trial court’s award of $22,000 and thus, remand this matter to the trial court, directing it to recalculate the amount of damages and to itemize the interest, prejudgment interest, and setoffs which may affect the award.
Likewise, relying on Taplin v. Farkas, 476 So.2d 723 (Fla. 3d DCA 1985), review denied, 486 So.2d 595 (Fla.1986), we find that the trial court erred in denying Royal Palm West’s and Catalfumo’s crossclaim for indemnity based upon the provision in the contract for sale. We do, however, affirm the denial of South Pacific’s and Santamaria’s claim for indemnity from Royal Palm West and Catalfumo.
Affirmed in part; reversed and remanded in part with directions.
WARNER, J„ and SPEISER, MARK A, Associate Judge, concur.