706 So.2d 916 (1998)
EASTON-BABCOCK & ASSOCIATES, INC., Appellant,
v.
Manuel FERNANDEZ, Appellee.
No. 97-902.
District Court of Appeal of Florida, Third District.
February 18, 1998.
Rehearing Denied April 1, 1998.
*917 Silver & Garvett, P.A. and Tim D. Henkel, Coral Gables, for appellant.
Arnaldo Velez, Miami, for appellee.
Before JORGENSON, LEVY and GREEN, JJ.
GREEN, Judge.
Appellant, Easton-Babcock & Associates, Inc. ("Easton-Babcock") is a commercial real estate brokerage firm which brought suit below against appellee, Manuel Fernandez, for an unpaid real estate commission fee. The case proceeded to trial by a jury which ultimately rendered its verdict in favor of Easton-Babcock. Fernandez's post-trial motion for judgment notwithstanding the verdict and/or renewed motion for directed verdict was granted by order of the lower court and final judgment was entered in favor of Fernandez. This appeal was then taken and for the ensuing reasons, we reverse.
We begin by acknowledging that the evidence and reasonable inferences therefrom adduced at the trial below must be viewed in a light most favorable to the non-moving party. See Woods v. Winn Dixie, 621 So.2d 710, 711 (Fla. 3d DCA 1993). Further, all conflicts in the evidence must be resolved in favor of Easton-Babcock as the nonmoving party. When viewed in this light, the evidence reveals that Easton-Babcock is a commercial real estate brokerage firm which renders its services primarily in the commercial warehouse district located near the Miami International Airport. Fernandez is a real estate broker and owner of a number of warehouses in the airport district, two of which were the subject matter of this litigation. One of the warehouses, Building One, is a multi-bay warehouse which can accommodate up to seven tenants. The other, Building Two, is a warehouse which accommodates only two tenants.
From late 1989 until 1992, Easton-Babcock procured most of the tenants in Buildings One and Two for Fernandez. For its services, Easton-Babcock timely received a six percent brokerage commission from Fernandez with one exception. In one instance, Easton-Babcock was forced to initiate a prior lawsuit against Fernandez to recoup an unpaid commission. That suit was settled and Fernandez was permitted to pay the unpaid commission over a period of time.[1]
Sometime in the fall of 1992, Fernandez discussed the sale of Building One with an Easton-Babcock agent. Fernandez agreed to pay a six percent commission if Easton-Babcock procured a ready, willing, and able buyer for Building One. Easton Babcock then placed its listing sign on Building One. Thereafter, Jorge Noriega, a Chilean businessman, spotted Easton-Babcock's sign while touring the airport district in search of warehouses to purchase. Noriega telephoned Easton-Babcock and they subsequently met with Fernandez. After various offers and counteroffers, Noriega and Fernandez reached an agreement in principle on the material terms for Noriega's purchase of Building One. Noriega then instructed Easton-Babcock to memorialize the agreed upon terms in writing and to present the same to Fernandez for his signature. Easton-Babcock submitted a confirmation letter dated October 28, 1992, which outlined the agreed upon terms, to Fernandez for his signature.
Sometime after receiving this confirmation letter, Fernandez informed Noriega and Easton-Babcock, for the first time, that he could not go through with the sale of Building One because of a pending bank foreclosure action on the building. During the negotiations, which preceded the October 28 confirmation letter, Fernandez had never disclosed the existence of any pending foreclosure action which would impair his ability to sell Building One. What Easton-Babcock did *918 not know at the time, however, and what it subsequently learned, was that the foreclosure action had been resolved and voluntarily dismissed on October 12, 1992, sixteen days prior to the October 28 confirmation letter.
When Fernandez claimed an inability to close on the deal with Noriega because of the foreclosure matter, Easton-Babcock took him at his word and did not seek its commission for procuring a ready, willing, and able purchaser of Building One. According to their testimony, Easton-Babcock's agents simply decided to "call it a day" on Building One. Easton-Babcock continued to seek out property for Noriega and ultimately persuaded Noriega to purchase Building Two from Fernandez in February 1993. Fernandez paid Easton-Babcock a commission for this sale, although it was lower than the customary six percent because Fernandez was having cash flow problems at that time.
After his purchase of Building Two, Noriega expressed a continuing interest in purchasing other warehouses. Accordingly, Easton-Babcock showed him other prospects. Sometime during late summer or early fall of 1993, Easton-Babcock attempted to reopen negotiations for Noriega's purchase of Building One from Fernandez. Easton-Babcock thereupon learned that on October 8, 1993, Fernandez and Noriega had already executed a contract for the sale and purchase of Building One. Noriega was the only prospective purchaser with whom Fernandez had negotiated for the sale of Building One. Moreover, Fernandez had drafted the sale contract which provided that no brokerage commission was owing and due. The material terms of this sales contract were identical to the terms previously negotiated by Easton-Babcock in October 1992. Noriega and Fernandez closed their deal on January 13, 1994. Easton-Babcock then submitted its written demand to Fernandez for payment of its real estate commission on Building One. When Fernandez declined to pay the same, this suit was filed.
The case proceeded to trial by jury. After Easton-Babcock rested its case in chief, Fernandez moved for directed verdict. The motion was denied and the case was ultimately given to the jury. The jury was instructed, among other things, to decide whether a sale of Building One had taken place, and if so, whether Easton-Babcock was the procuring cause of the sale.[2] The jury returned its verdict in favor of Easton-Babcock and awarded compensatory damages in the sum of $46,500.00, which represented a six percent commission from the sale of Building One.
Fernandez filed post-trial motions for judgment notwithstanding the verdict and/or renewed motion for directed verdict. Citing primarily to Richland Grove & Cattle Co., Inc. v. Easterling, 526 So.2d 685 (Fla.1988), Fernandez argued that as a matter of law, Easton-Babcock could not be deemed the procuring cause of the sale where, for approximately eleven and one half months (i.e., October 1992 until September 1992), Easton-Babcock had not been involved in continuous negotiations for the sale of Building One and thus had effectively abandoned its listing. The trial court agreed, granted the motion, and entered final judgment for Fernandez. On this appeal, Easton-Babcock urges that the lower court erred where there was evidence from which the jury could conclude that it produced a purchaser on terms acceptable to the seller in 1992; and that the *919 seller affirmatively misrepresented his ability to sell the property at that time in order to exclude Easton-Babcock from the negotiations. Alternatively, Easton-Babcock's urges that its nonparticipation in the negotiations for eleven and one half months was not an unreasonable length of time so as to constitute an abandonment of its listing as a matter of law.
To sustain a judgment entered pursuant to a directed verdict or a judgment notwithstanding the verdict, the record must conclusively demonstrate a total absence of facts or reasonable inference therefrom which would support the jury's verdict. See Woods v. Winn Dixie Stores, Inc., 621 So.2d at 711; Perry v. Red Wing Shoe Co., 597 So.2d 821, 822 (Fla. 3d DCA 1992); Salam v. Benmelech, 590 So.2d 1008, 1009 (Fla. 3d DCA 1991); see also United Farm Agency of Fla., Inc. v. DKLS, Inc., 560 So.2d 1212, 1213 (Fla. 3d DCA 1990) ("[motion] should be resolved with caution because the granting of the motion holds that one side of the case is without probative evidence."). Where, however, there is any evidence to support a possible verdict for the non-moving party, even where a preponderance of the evidence favors the moving party, a directed verdict "can constitute an encroachment on the right of a litigant to a jury trial and an invasion by the court of the province of a jury which is contrary to constitutional guaranties...." Hernandez v. Motrico, Inc., 370 So.2d 836, 838 (Fla. 3d DCA 1979) (footnote omitted). Moreover, where the evidence is conflicting or permits different reasonable inferences, it should be submitted to the jury as questions of fact and not passed upon by the court as questions of law. See A.K. Hilkmeyer v. Latin American Air Cargo Expediters, Inc., 94 So.2d 821, 824 (Fla.1957); Bryan v. Loftin, 51 So.2d 724, 725 (Fla.1951); Olin's, Inc. v. Avis Rental Car Sys. of Florida, Inc., 141 So.2d 609, 611 (Fla. 3d DCA 1962); Marsa v. Lopez, 400 So.2d 563, 564 (Fla. 3d DCA 1981). Based upon these standards, we conclude that the lower court erred when it overturned the jury's verdict and entered judgment in Fernandez's favor.
At issue in the case below was whether Easton-Babcock was the procuring cause for the sale of Building One. In order to be deemed the procuring cause of a sale, it is settled that a broker must have brought the purchaser and seller together and effected a sale through continuous negotiations inaugurated by him or her, unless the purchaser and seller intentionally exclude the broker and thereby vitiate the need for continuous negotiations. See Whitehead v. Dreyer, 698 So.2d 1278, 1280 (Fla. 5th DCA 1997); Lee Giusti Realty, Inc. v. L.D. Corp., 603 So.2d 39, 40 (Fla. 4th DCA 1992); Edwards v. Brandon Realty, Inc., 497 So.2d 269, 271 (Fla. 2d DCA 1986); Sheldon Greene & Assocs., Inc. v. Rosinda Investments, N.V., 475 So.2d 925, 926 (Fla. 3d DCA 1985), review dismissed sub nom. Horn v. Sheldon Greene & Assocs., Inc., 502 So.2d 421 (Fla.1987). There was evidence in this case from which the jury could have concluded or reasonably inferred that the broker's agreement with the seller called for the broker to produce a ready, willing, and able buyer for Building One; that the broker did so in October 1992; and that the seller and purchaser agreed on the material terms of the sale at that time. There was also evidence from which the jury could have further concluded or reasonably inferred that the sale was intentionally not brought to fruition at that time to circumvent the payment of the broker's commission. The seller simply cannot resist the broker's claim for commission by arguing that the broker did not participate in the ultimate sales negotiations for eleven and one half months where there was evidence from which the jury could reasonably conclude that the seller and buyer had purposely excluded the broker. See South Pacific Enters., Ltd. Partnership v. Cornerstone Realty, Inc., 672 So.2d 568, 570 (Fla. 4th DCA), review denied, 682 So.2d 1100 (Fla.1996).
Indeed, we think that the evidence of the broker's intentional exclusion from the ultimate sale completely takes this case outside of the realm of the supreme court's decision in Richland Grove & Cattle Co., Inc. v. Easterling, the case relied upon by the lower court in overturning the jury's verdict. In Richland Grove, the supreme court found as a matter of law that a broker had voluntarily *920 abandoned his open-ended contract and right to commission with the seller where the broker had failed to contact the seller for about two and one half years about the listed property, and the seller independently sold the property. Citing to its earlier decision of Shuler v. Allen, 76 So.2d 879 (Fla.1955), the court reiterated that when no time period is specified for a listing, the listing does not give rise to a brokerage in perpetuity, and where it is undisputed that the broker has failed to communicate with the seller for an extended period of time about the property the broker will not be deemed to have abandoned the listing and will be entitled to a commission upon the seller's procurement of a purchaser. See 526 So.2d at 687-88. Clearly, the Richland Grove court was not faced with the scenario of a broker's intentional exclusion from negotiations about the property for a period of time by the seller and buyer, as we are in this case. We think that the lower court's reliance on Richland Grove on the facts of this case was simply misplaced, and for that reason it is not necessary for us to decide whether Easton-Babcock's absence from the negotiations for an eleven and one half month period is reasonable as a matter of law. As this court has held in Sheldon Greene, the need for continuous negotiations is vitiated by the intentional exclusion of the broker. See 475 So.2d at 927.
For all of the aforestated reasons, we conclude that the lower court erred in granting Fernandez's post-trial motion for judgment notwithstanding the verdict and/or renewed motion for directed verdict and entering final judgment on his behalf. We therefore reverse and remand with instructions that the jury's verdict be reinstated and that final judgment be entered in favor of Easton-Babcock.
Reversed and remanded with instructions.
NOTES
[1] Fernandez made the last payment in October 1992.
[2] Without objection, the following definition was provided to the jury:

* * * * * *
In order to be the procuring cause of the sale of property, thus entitling the broker to come into a commission, the parties must have been brought together through the efforts of the broker, and the sale must have occurred as a result of the continuous negotiations started by the broker unless the buyer and the seller intentionally excluded the broker.
In determining whether Plaintiff Easton-Babcock was the procuring cause, I advise you that a broker is not entitled to a commission in every case when he, she or it brings a buyer or seller together and sometime later a sale occurs. If, after a reasonable time the broker has failed to finalize the sale of property and the negotiations initiated by the broker are terminated, then the seller may exclude the broker from future negotiations with the same prospective buyer and the broker is not entitled to a commission in the sale that results. If you find that the Plaintiff, Easton-Babcock, was not the procuring cause of the sale, then your verdict must be for the Defendant Fernandez.