[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 4, 2011
JOHN LEY
CLERK

_____

No. 10-12530

_____

D.C. Docket No. 3:08-cv-00917-HLA-JRK


BKR GLOBAL, LLC,
a Florida Limited Liability Company,

                                                            Plaintiff - Appellant,

versus

FOURWINDS CAPITAL MANAGEMENT,
a Cayman Islands Company,
PHAUNOS TIMBER FUND LIMITED,
a Guernsey Company,

                                                            Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 4, 2011)

Before MARCUS, WILSON and HILL, Circuit Judges.


HILL, Circuit Judge:

BKR Global, LLC appeals the entry of summary judgment against it in its action for breach of contract against defendant FourWinds Capital Management, tortious interference with a contractual relationship against defendant Phaunos Timber Fund Limited, deceptive and unfair trade practices and civil conspiracy against FourWinds and Phaunos, and unjust enrichment against Phaunos. The district court held that BKR could not prevail on its contract claim and that all the other claims failed as a result.[1]

I.

In January of 2007, BKR Global, LLC ("BKR") entered into a Consulting Agreement (the "Agreement") with FourWinds Capital Management ("FourWinds") that provided that BKR – an experienced timber investment consulting firm – would seek to provide FourWinds with "investment opportunities" in the timber industry. Essentially BKR agreed to act as a broker, finding and introducing potential investment opportunities for FourWinds. The Agreement provided that FourWinds would pay BKR $3000 per month to cover costs and expenses for these services. The Agreement also provided, however, that BKR would be "included in the investment process either as due diligence

---

[1]BKR did not appeal the dismissal of its claim in Count IV for fraud and this opinion does not alter that result.

agent . . . or as acquisition agent" if FourWinds "pursu[ed] an investment opportunity that the Consultant introduced." The parties agreed that BKR would be compensated separately for such services,[2] and that FourWinds would "include [BKR] in any transaction which it has introduced for a period of two years from the date of the introduction . . . ."

In late March of 2007, a BKR representative attended a timber conference at which she learned of a timber company, Nemus, S/A, that was seeking investors in its teak and eucalyptus plantations in Brazil. BKR discussed investment opportunities for FourWinds with the Nemus representative who gave her a confidential prospectus to give to FourWinds. The prospectus provided background information about Nemus' business and history and outlined a $25 million dollar investment opportunity in the company.

BKR delivered this prospectus to FourWinds and follow-up emails were exchanged among the three parties. Almost immediately, however, FourWinds began to communicate directly with Nemus. Over the next two months, FourWinds had repeated conversations with Nemus, and even sent a representative to Brazil to meet with Nemus representatives in June. By late October, serious

---

[2]Although the parties did not specify at what rate BKR would be compensated, FourWinds concedes that an appropriate commission for acquisition services would be somewhere between 1.5 and 2 percent of the value of the deal.

discussions about a joint venture were taking place. In November, FourWinds sent a letter to BKR terminating the Consulting Agreement.

On December 14, 2007, FourWinds announced that it was entering into a joint venture with Nemus through Phaunos Timber Fund Limited ("Phaunos"), a timberland investment vehicle for which FourWinds acts as investment manager, and a newly created entity, Eucateca S.A. This joint venture amounted to an investment of approximately $150,000,000.

BKR demanded its commission under the original Agreement. FourWinds rejected this demand, stating that BKR was not entitled to a commission because discussions with Nemus regarding the joint venture began after Nemus "cold called" FourWinds.[3] This action ensued.[4]

## II.

The central issue in this case is whether FourWinds "pursued an investment opportunity that [BKR] introduced." If so, FourWinds was obligated to include BKR "in the investment process either as due diligence agent . . . or as an acquisition agent" and compensate it separately, which it admittedly did not do. The district court held that, as a matter of law, FourWinds did not pursue an

---

[3]FourWinds now concedes that BKR introduced it to Nemus.

[4]Although originally a defendant, Nemus has been dismissed.

investment opportunity that BKR introduced. It held that ultimately the deal consummated was "materially" different from the "investment opportunity" BKR introduced, relieving FourWinds of all obligations to BKR under the Agreement. We disagree.

The evidence presented in this case creates a triable issue of fact as to whether the investment opportunity FourWinds pursued with Nemus was materially different from that presented to it by BKR. Such a question of fact cannot be decided as a matter of law. It is for a jury to decide.

There is not a single case cited by the district court to support its conclusion that the facts of this case are controlled by law. Nor do the parties cite any cases holding that this case may be decided as a matter of law. There is a reason for this. There are no such cases.

The question whether the investment opportunity pursued by FourWinds is covered by its agreement with BKR is one of fact, to be resolved by a jury. There are cases to support this conclusion. In a case involving whether an investment banking firm was entitled to a fee for its services as a broker for the acquiring corporation in a corporate merger, the First Circuit held that "the appropriate determination of the connection between the final transaction and the activities of a broker or finder is a factual, rather than a legal, matter. The jury should have

been allowed to find the exact nature of [the brokers'] obligations under . . . the agreement. . . . After determining the exact nature of the agreement, the jury could have considered whether [the brokers] had established the requisite connection between their efforts and the ultimate transaction." *Bushkin Assocs., Inc. v. Raytheon Co.*, 815 F.2d 142, 152 (1st Cir. 1987).[5]

Furthermore, Florida law clearly provides that whether a broker is the "procuring cause" of the ultimate transaction between two parties is a question for a jury. *Easton-Babcock & Assoc., Inc. v. Fernandez*, 706 So. 2d 916, 919 (Fla. 3d DCA 1998).[6] Even FourWinds agrees that "whether a broker is the 'procuring cause' can be a question of fact for the jury." FourWinds merely argues that no reasonable juror could have determined that BKR was the procuring cause of the ultimate deal in this case. We disagree.

There was evidence in this record from which a jury could have concluded that BKR produced an investment opportunity in timber for FourWinds as it had

---

[5]The parties agree that either Florida or Massachusetts law controls this dispute, and that there is no material difference in that law on this issue.

[6]Although the common law "procuring cause" doctrine traditionally applies in the context of commission disputes between real estate brokers and property sellers, we find guidance in its similar principles of law and equity. Neither party offered any case either approving or disapproving the application of the doctrine in the circumstances of this case. FourWinds argues that the doctrine is inapplicable "[b]ecause BKR is not entitled to any additional compensation under the Consulting Agreement," but this argument, of course, begs the question whether the Agreement between BKR and FourWinds limits BKR's right to compensation under the circumstances of this case.

6

contracted to do, that BKR introduced FourWinds to Nemus, a willing and able investment partner, that FourWinds and Nemus continuously discussed investment opportunities, that FourWinds excluded BKR from such discussions, and that it terminated its Agreement with BKR shortly before announcing its joint venture with Nemus. Whether BKR is entitled to compensation under its Agreement with FourWinds in these circumstances is a classic jury question. *See id*. *See also Moylan v. Estes*, 102 So. 2d 855 (Fla. 3d DCA 1958); *Stuart v. Valsom*, 143 N.E. 815, 816 (Mass. 1924).

## III.

The district court erred in granting summary judgment to FourWinds on BKR's contract claim for compensation under its Agreement with FourWinds. Whether FourWinds pursued an investment opportunity that BKR introduced is a question of fact for a jury.

Additionally, the district court's grant of summary judgment to FourWinds on BKR's non-contract theories of relief depended on the district court's erroneous view that BKR's contract claim is precluded as a matter of law.

Accordingly, the grant of summary judgment to FourWinds shall be reversed and the case remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.